ANTIONE A. ALLEN AND WIFE, ANGELA D. ALLEN; COLLEEN A. BANNISTER; WILLIAM BARNETT, JR. AND WIFE, PEARL A. BARNETT; ANTHONY T. BRANDON; JACQUELINE B. BROWN; CHINAUWA S. CHANEY; VERA P. DAVIS; ANGELA H. DUNLAP; MORRIS L. ELLIOTT AND WIFE, JACQUELINE L. ELLIOTT; THOMAS E. FENTRESS AND WIFE, SANDRA JONES-FENTRESS; CYNTHIA DIANNE FORD; LAURALEI E. GRAVES; LARRY D. GREEN AND WIFE, MARCIA LYNN GREEN; BARBARA J. HARVEY; RANDY M. HENDERSON AND WIFE, KIMBERLY Y. HENDERSON; JAMES E. HUGGINS; LADON M. JAMES; REGINALD L. MASON; HARRY E. McCULLOUGH, JR. AND WIFE, JO ANN McCULLOUGH; SAMUEL D. McQUEEN, JR. AND WIFE, DOTTIE P. McQUEEN; FAILYA M. MILES AND SOPHIE L. MILES; PATRICIA A. MOORE; WILLIAM E. MOORE; KIMBEL ROYAL MURPHY AND WIFE, DEBORAH R. MURPHY; CALVIN M. SMITH AND WIFE, GAIL S. SMITH; LINTON A. THOMPSON AND WIFE, DIMPLES G. THOMPSON; TAMMY TUCK; PHYLLIS JOHNSON-WIGGINS; KENNETH S. WORMACK AND WIFE, VANDA V. WORMACK; AND GLADYS M. YARN, PLAINTIFFS V. ROBERTS CONSTRUCTION COMPANY, INC.; BOBBY ROBERTS; AND BRYANT B. ROBERTS, DEFENDANTS

No. COA99-775

(Filed 5 July 2000)

**1. Evidence— photographs—action for defective construction of house—cracks in foundations of other houses—not unfairly prejudicial**

The trial court did not abuse its discretion in an action alleging defective construction of a house by finding that the probative value of photographs of cracks in the foundations and floors of other houses constructed by defendant Roberts Construction in the same subdivision was not outweighed by the danger of unfair prejudice. Plaintiffs' use of the photographs was not so expansive as to be unfairly prejudicial.

**2. Fraud— defective construction of house—cracks in other houses—knowledge of defects**

The trial court properly denied defendants' motion for a directed verdict on the issue of fraud in an action arising from the allegedly defective construction of a house where there was evidence of cracks in the floors and foundations of approximately thirty other houses constructed by defendants using the same slab on grade method and that these houses did not meet building code standards. A reasonable person could find based on this evidence that Roberts Construction had actual knowledge of structural defects in plaintiffs' house at the time plaintiffs' purchased their home.

ALLEN v. ROBERTS CONSTR. CO.

[138 N.C. App. 557 (2000)]

### 3. Unfair Trade Practices— construction of house—fraud— failure to obtain contractor's license

The trial court did not err in an action arising from the allegedly defective construction of a house by entering judgment against defendant Roberts Construction and Bobby Roberts for unfair and deceptive trade practices where the court based its conclusion regarding Roberts Construction on a judgment for fraud against Roberts Construction, and the conclusion as to Bobby Roberts upon three conclusions, only one of which (failure to obtain a general contractor's license) was appealed.

### 4. Construction Claims— negligent construction of house— contractor's license

The trial court properly denied defendants' motion for a directed verdict on the issue of defendant Bryant Roberts' negligence in an action arising from the construction of a house where the single issue regarding Bryant Roberts' negligence was whether Bryant Roberts was the general contractor for the construction of the house (and thereby had a duty to supervise construction) and there was testimony that Bryant Robert's general contractor's license was used to build plaintiff's house.

### 5. Warranties— express—construction of house—written notice—complaint

The trial court erred by denying defendant Roberts Construction a directed verdict on the issue of breach of express warranty arising from the house not being constructed in substantial conformity with the plans and specifications approved for the house where the terms of the warranty required written notice of the breach. Assuming that service of a complaint is sufficient to give written notice, as plaintiffs contend, this complaint did not allege that Roberts Construction failed to construct the house in substantial conformity with the plans and specifications which were approved for the house and therefore did not provide Roberts Construction with written notice of the alleged breach.

### 6. Warranties— implied warranty of habitability—house— cracks

The trial court properly denied defendants' motion for a directed verdict on the issue of breach of implied warranty of habitability in a case arising from cracks in plaintiff's house where there was testimony regarding numerous cracks in the

ALLEN v. ROBERTS CONSTR. CO.

[138 N.C. App. 557 (2000)]

interior and exterior of plaintiff's house, including the floor, foundation wall, and sheetrock; that plaintiffs' foundation did not conform to the minimum requirements of the building code and plans; and the construction of the foundation created a major structural defect. Based on this evidence, a reasonable juror could find that plaintiffs' house was not free from structural defects and that the foundation was not constructed in a workmanlike manner.

Appeal by defendants from order filed 31 July 1998, from judgment filed 2 September 1998, and from order filed 1 October 1998 by Judge Henry W. Hight, Jr. in Durham County Superior Court in favor of plaintiffs Randy M. Henderson and wife, Kimberly Y. Henderson. Heard in the Court of Appeals 9 May 2000.

*Law Office of Robert B. Jervis, P.C., by Robert B. Jervis, and Couch & Associates, by Finesse G. Couch, for plaintiff-appellees Randy M. Henderson and Kimberly Y. Henderson.*

*Hayes Hofler & Associates, P.A., by R. Hayes Hofler, and Maupin Taylor & Ellis, P.A., by John I. Mabe, Jr. and Kevin W. Benedict, for defendant-appellants.*

GREENE, Judge.

Roberts Construction Company, Inc. (Roberts Construction), Bobby Roberts, and Bryant Roberts (collectively, Defendants) appeal the trial court's denial of Defendants' motions for directed verdict, a judgment filed 2 September 1998 in favor of Randy Henderson and Kimberly Henderson (collectively, Plaintiffs), and an order filed 1 October 1998 denying Defendants' motion for judgment notwithstanding the verdict. Additionally, Defendants appeal the trial court's denial of their motions for summary judgment; however, these assignments of error were not set out in Defendants' brief to this Court and are, therefore, deemed abandoned. N.C.R. App. P. 28(b)(5).

This case began as a consolidated action against Defendants filed by approximately forty plaintiffs on 10 March 1997 for breach of contract, breach of implied warranty, breach of express warranty, fraud, and unfair and deceptive trade practices. The allegations in the complaint arose out of the construction by Roberts Construction of approximately thirty houses in the Forestwood subdivision in Durham. This consolidated action came to trial on 10 August 1998, and the parties consented to go forward with Plaintiffs' claims.

Consequently, only Plaintiffs' case was tried on that date, and Plaintiffs' case is the sole case on appeal before this Court.

*Plaintiffs' Evidence*

Plaintiffs presented evidence at trial that on 26 August 1996 they purchased a house located at 10 Rush Court in the Forestwood subdivision from Roberts Construction. The house was constructed by Roberts Construction, and the purchase price was approximately $86,500.00. At the time of the construction, Bobby Roberts was the sole owner of Roberts Construction and Bryant Roberts was an employee of Roberts Construction. Plaintiffs testified they did not notice any problems with the construction of the house prior to moving into the house; however, Kimberly Henderson noticed cracks in the house beginning in October of 1996.

At the time of Plaintiffs' purchase, Roberts Construction provided Plaintiffs with an express warranty which guaranteed, in pertinent part, that "[Plaintiffs' house] . . . is constructed in substantial conformity with the plans and specifications . . . which have been approved [for the construction of the house]." This warranty required Plaintiffs to provide Roberts Construction with written notice of any nonconformity "within one year from the date of original conveyance of title to . . . [Plaintiffs] or the date of initial occupancy, whichever first occurs."

Benjamin Wilson (Wilson) testified as an expert in the fields of geo-technical engineering and construction materials. Wilson testified regarding the method of constructing a "slab on grade" house, which was the method used by Roberts Construction to build the houses in the Forestwood subdivision. He stated the ground would first be excavated by a backhoe, and the building inspector would then approve the exposed soil for the pouring of concrete. The concrete would be poured around the perimeter of the foundation to the minimum width and thickness required under the North Carolina and Durham Building Codes (the building code) and, after the concrete had hardened, concrete block walls would be constructed around the perimeter. A stone base would be placed on top of the soil inside the perimeter and a vapor barrier, which is a piece of plastic, would be placed on top of the stone base. Concrete would then be poured and, if the plans called for the use of a wire mesh, concrete would be spread over the wire mesh and the wire mesh would be "pulled up into the concrete." Finally, finished flooring, such as vinyl, carpet, or wood, would be placed on top of the concrete slab. The building code

**ALLEN v. ROBERTS CONSTR. CO.**

[138 N.C. App. 557 (2000)]

requires a minimum compressive strength for a concrete slab of 2500 pounds per square inch (PSI) and minimum thickness of three-and-one-half inches.

Plaintiffs presented evidence the building plans for the construction of their house required a four-inch stone base and a four-inch concrete slab. Plaintiffs' plans also required the use of a vapor barrier and wire mesh reinforcement.

Wilson testified he inspected Plaintiffs' house on 14 December 1996, 6 January 1998, and 3 August 1998. The 14 December 1996 inspection of the house revealed a three-to-four foot hairline crack in the concrete floor beginning at the front door and hairline cracks running horizontally and vertically "in the foundation wall on the left end of the residence." Wilson stated a hairline crack is "typically just . . . a crack that has not opened up and [is] less than a 16th of an inch." Wilson testified that when he revisited Plaintiffs' house in January of 1998, the crack in the floor continued to the staircase that leads to the second floor, and Wilson could not determine whether the crack continued under the staircase. The crack had increased in width from a hairline crack to a crack one-quarter to three-eighths of an inch at its widest point. Further, an additional crack had appeared in the foundation wall on the left side of the house. Finally, Wilson testified that when he returned to the house on 3 August 1998, he observed numerous additional cracks on the interior and exterior of the house, including a crack in the floor of the washer/dryer area of the kitchen which proceeded between one-half and one-third of the way across the kitchen floor, a crack proceeding across a bedroom floor and under a wall into another room, and a crack in the sheetrock on the front wall of the house. Wilson stated cracks in sheetrock typically "are the last things to appear when a house is undergoing structural problems."

Wilson also testified he took core samples from the floors of Plaintiffs' house on 27 August 1997. Wilson obtained the core samples by pulling back the carpet in the house and coring through the concrete, leaving a hole in the concrete that is six inches in diameter. Gravel was then dug out by hand, and the thickness of the gravel was measured. Once the gravel had been removed, Wilson then cored down through the soil with a hand auger and took a "dynamic cone penetration test." This was done by driving a cone into the soil to obtain a soil sample.

Wilson testified a core sample taken near the end of one of the cracks in the floor indicated the concrete slab was only three inches thick, which was less than the minimum thickness required by Plaintiffs' plans and by the building code. There was also a one and one-half inch air gap between the vapor barrier and the stone, and below the gap there was a two-inch layer of crushed rock mixed with soil. Also, the soil below the rock was not compacted to the standard required by the building code. Wilson testified based on these tests that the compaction under the slab was not done in a workmanlike manner, did not conform to the minimum requirements of the building code, and created a "major structural deficiency." He also testified the slab itself did not meet minimum building code requirements and created a "major structural defect." Wilson testified the concrete samples revealed an average compressive strength of 940 PSI, which does not meet minimum building code standards and created a "major structural deficiency." He also stated the concrete did not contain the wire mesh required in Plaintiffs' plans.

Plaintiffs also presented evidence regarding cracks in other houses in the Forestwood subdivision constructed by Roberts Construction between 1994 and 1996. Plaintiffs offered into evidence photographs of these cracks, and Defendants objected to the admission of the photographs on the ground their probative value was substantially outweighed by undue prejudice under Rule 403 of the North Carolina Rules of Evidence. In response to Defendants' objection, the trial court stated it had "performed the balancing test under Rule 403" and Defendants' objection was overruled. The photographs were authenticated through the testimony of the photographer who had taken the photographs and they were then admitted into evidence. Wilson subsequently testified regarding the cracks in the other houses constructed by Roberts Construction, and he referred to the photographs of these other houses to illustrate his testimony. Wilson testified he had inspected between thirty-two and thirty-five houses in the Forestwood subdivision other than Plaintiffs' house, and these houses contained cracks similar to the cracks in Plaintiffs' house. Also, these houses did not meet various building code standards for average PSI, concrete thickness, rock thickness, and compaction below the slab. During Wilson's testimony, Defendants objected to his testimony "about cracks in other houses other than . . . [Plaintiffs'] house" on the ground this testimony could not be used as a basis for Wilson's opinion about Plaintiffs' house, and the trial court overruled the objection.

**ALLEN v. ROBERTS CONSTR. CO.**

[138 N.C. App. 557 (2000)]

Plaintiffs presented evidence that in order to repair the cracking in their house, the concrete slab would have to be torn out and reconstructed and foundation piers would have to be placed under the house. Plaintiffs' evidence showed the cost of this reconstruction would be approximately $58,436.00.

At the close of Plaintiffs' evidence, Defendants made the following motions for directed verdict, which the trial court denied: a motion for directed verdict on the issues of fraud and unfair and deceptive trade practices; a motion for directed verdict on the negligence claim against Bryant Roberts individually; a motion for directed verdict on the fraud claim against Bobby Roberts individually; a motion for directed verdict on the express warranty claim; and a motion for directed verdict on the implied warranty claim.

### Defendants' Evidence

Bobby Roberts testified for Defendants that he is employed by Roberts Construction and is the president and sole shareholder of the company. He testified Roberts Construction had 90 to 100 employees at the time Plaintiffs' house was constructed. Roberts Construction constructs slab on grade houses, and the slab upon which Plaintiffs' house was built was constructed under the supervision of Glennie McFarland (McFarland) and Fred Haithcock (Haithcock), who are employees of Roberts Construction. All of the labor on the houses was done by employees of Roberts Construction, and subcontractors were not used to perform any of the work. Bobby Roberts testified that under the building code, the concrete used in constructing slab on grade houses may be reinforced with either a wire mesh reinforcement or fiber reinforcement.

Bobby Roberts testified on cross-examination that Bryant Roberts did not own any shares in Roberts Construction, and Bryant Robert's general contractor's license was used to build Plaintiffs' house. In his continuing testimony, he said he did not know at the time of the construction that it was unlawful for Roberts Construction to build using Bryant Robert's license; however, he was aware at the time of trial that the use of Bryant Robert's license was unlawful. He also testified that at the closing on Plaintiffs' house he had signed documents representing he was the general contractor for the house.

Bobby Roberts testified he signed an affidavit prior to trial that stated: "I am president of Roberts Construction Company, Inc., and in conjunction with Glen McFarland, personally oversaw and super-

vised the construction of all the 223 houses located in the Forestwood subdivision." He testified at trial, however, that he did not "personally supervise anybody" and that he "supervise[d] the superintendents." He stated he did not have any recollection of being at Plaintiffs' house while it was being constructed. Bobby Roberts stated he did not believe the structural problems with Plaintiffs' house were caused by leaving out the wire mesh reinforcement when constructing the foundation. Further, Bernie Ivey, a former building inspector for the City of Durham, testified wire mesh reinforcement has not been required in slab on grade foundations under the building code since approximately 1993.

Larry Hairston, a building inspector for the City of Durham, testified he inspected Plaintiffs' house during its construction and found the thickness of the gravel, vapor barrier, and compactness of the soil met the requirements of the building code.

Haithcock testified concerning the daily activities at Roberts Construction that all of the workers would meet with Bobby Roberts at the company's shop in the morning, and Bobby Roberts would go over with the workers what was planned for the day and what had been done on the previous day. Haithcock stated the construction was directly supervised by McFarland, and the workers were able to remain in radio contact with Bobby Roberts throughout the day. Haithcock stated on cross-examination he never witnessed Bryant Roberts supervising work on a construction site for Roberts Construction.

McFarland testified he is the superintendent of construction for Roberts Construction and, as part of his job, he is required to "supervise the whole of the crew and make sure they [are] performing their job properly." He stated part of the job of the workers at Roberts Construction is to pour concrete slabs, and if the soil underneath the slabs is not properly compacted then the concrete will not be properly supported and might crack. He stated problems with cracking in the concrete slabs did not arise until the reinforcement used in the concrete was changed from wire mesh reinforcement to fiber. McFarland testified the homes in the Forestwood subdivision were built under Bryant Robert's license; however, if McFarland had any problems at a job site, he would contact Bobby Roberts, and he never saw Bryant Roberts supervising any of the construction.

Thomas Caldwell (Caldwell), an expert in structural engineering, testified he had inspected thirty-two houses in the Forestwood sub-

division, and approximately ten of the houses had "either very significant or very severe structural damage to the footings and slabs," while approximately twenty of the houses had "a much lower degree of damage[,] [d]amage that would be fairly typical for most houses, perhaps a few minor cracks, lots of cracked stucco, but no signs of significant settlement or significant structural damage." Caldwell testified he categorized the damage to Plaintiffs' house as "slight foundation damage," which means the house had "small foundation wall cracks, small slab cracks, minor or no footing settlement found or suspected, [and] minor repairs recommended." In Caldwell's opinion, the cost of making the necessary repairs to Plaintiffs' house would be approximately $2,000.00.

At the close of all of the evidence, Defendants made motions for directed verdicts on the following issues: fraud and unfair and deceptive trade practices as to all Defendants; all individual claims against Bryant Roberts; all individual claims against Bobby Roberts; and all claims of breach of express and implied warranty. The trial court denied these motions.

### Jury Verdict

Subsequent to its deliberations, the jury returned the following verdict: Roberts Construction breached its express warranty and implied warranty of habitability, causing Plaintiffs $60,236.00 in damage; Bryant Roberts was negligent, causing Plaintiffs $60,236.00 in damage; Roberts Construction committed fraud, causing Plaintiffs $60,236.00 in damage; and Bobby Roberts did not commit fraud. The jury also made the following relevant findings regarding the conduct of Bobby Roberts: (1) Bobby Roberts "[e]ngage[d] in the profession of general contractor with respect to [Plaintiffs' house] without having obtained a general contractor's license as required by law"; (2) Bobby Roberts "[c]onceal[ed] material facts relevant to [Plaintiffs' house] from . . . Plaintiffs which he knew at the time of purchase that . . . Plaintiffs could not discover in the exercise of due diligence"; and (3) Bobby Roberts "[f]alsely represent[ed] to . . . Plaintiffs that [Plaintiffs' house] had been constructed in substantial conformity with plans and specifications approved [for the house]."

The trial court then found, based on the jury's verdict, that Roberts Construction and Bobby Roberts had engaged in unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. The trial court, therefore, entered a judgment for treble damages against Roberts Construction and Bobby Roberts in the amount of

$180,708.00, plus $39,490.00 in attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1. The trial court also entered judgment against Bryant Roberts in the amount of $60,236.00 based on the jury's finding of negligence.[1]

---

The issues are whether: (I) the probative value of photographs of cracks in the floors and foundations of other houses constructed by Roberts Construction was substantially outweighed by unfair prejudice under Rule 403 of the North Carolina Rules of Evidence; (II) the record contains substantial evidence Roberts Construction had actual knowledge of structural defects in Plaintiffs' house at the time Plaintiffs purchased the house; (III) the record supports entry of judgment for unfair and deceptive trade practices against Roberts Construction and Bobby Roberts; (IV) the record contains substantial evidence Bryant Roberts was the general contractor for the construction of Plaintiffs' house; (V) the record contains substantial evidence Plaintiffs provided Roberts Construction with written notice of its alleged breach of the parties' express warranty; and (VI) the record contains substantial evidence Plaintiffs' house was not constructed in a workmanlike quality.

## I

### Admission of Evidence

[1] Defendants argue photographs of cracks in the foundations and floors of other houses constructed by Roberts Construction in the Forestwood subdivision should not have been admitted into evidence because the probative value of the photographs was outweighed by unfair prejudice under Rule 403 of the North Carolina Rules of Evidence.[2] We disagree.

---

1. Although the judgment does not state Defendants are jointly and severally liable, Plaintiffs conceded during oral argument before this Court that Defendants' liability is joint and several.

2. Defendants also filed a motion *in limine* to exclude *any* evidence of cracks in other houses in the Forestwood subdivision under Rule 403, and Defendants have assigned error to the trial court's denial of their motion *in limine*. The trial court's ruling on a motion *in limine*, however, is insufficient to preserve for appellate review the admissibility of evidence sought to be excluded in the motion. *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999). Accordingly, because Defendants objected at trial only to the admission of the photographs under Rule 403 and not to other evidence of cracks, the admission of evidence other than the photographs is not properly before this Court.

Additionally, Defendants argue in their brief to this Court that the trial court erred by granting Plaintiffs' motion *in limine* to exclude evidence of other houses con-

**ALLEN v. ROBERTS CONSTR. CO.**

[138 N.C. App. 557 (2000)]

Rule 403 provides, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C.G.S. § 8C-1, Rule 403 (1999). Whether evidence should be excluded under Rule 403 is in the sound discretion of the trial court. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986).

In this case, Defendants argue "the cumulative effect of . . . [P]laintiffs' expansive use of [the photographs] [] outweighed the probative value of the evidence." The evidence shows the photographs of other houses were admitted into evidence, and Wilson used the photographs to illustrate his testimony regarding cracking in the floors and foundations of other houses constructed by Roberts Construction. The record does not show Plaintiffs' use of the photographs was so "expansive" as to be unfairly prejudicial, and the trial court did not abuse its discretion by finding the probative value of the evidence was not substantially outweighed by any unfair prejudice to Defendants. *See State v. Burrus*, 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996) ("trial court may be reversed for an abuse of discretion only upon a showing that its ruling could not have been the result of a reasoned decision").

## II

### *Fraud*

**[2]** Defendants argue the record does not contain any evidence Roberts Construction had actual knowledge of structural defects in Plaintiffs' house at the time Plaintiffs purchased the house, and, therefore, a directed verdict should have been granted in favor of Roberts Construction on Plaintiffs' fraud claim. We disagree.

A defendant is entitled to a directed verdict when, viewing the evidence in the light most favorable to the plaintiff, there is no substantial evidence to support the plaintiff's claim. *Cobb v. Reitter*, 105 N.C. App. 218, 220-21, 412 S.E.2d 110, 111 (1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990).

The elements of fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3)

structed by Roberts Construction that did not have cracks in the floors or foundations. Defendants, however, did not offer or attempt to offer this evidence at trial, and the trial court's exclusion of this evidence, therefore, is not properly before this Court. *See id.*

ALLEN v. ROBERTS CONSTR. CO.

[138 N.C. App. 557 (2000)]

made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Brickell v. Collins*, 44 N.C. App. 707, 710, 262 S.E.2d 387, 389, *disc. review denied*, 300 N.C. 194, 269 S.E.2d 622 (1980). Further, the false representation must relate to facts of which the defendant had actual knowledge, *id.* at 711-712, 262 S.E.2d at 390, and actual knowledge may be shown by circumstantial evidence admitted pursuant to Rule 404(b), N.C.G.S. § 8C-1, Rule 404(b) (evidence of other acts admissible to show knowledge); *State v. Sisk*, 123 N.C. App. 361, 368, 473 S.E.2d 348, 353 (1996) (evidence of other forged checks cashed by defendant or her boyfriend admissible under Rule 404(b) to show defendant's knowledge that the check in question was forged), *aff'd in part and review dismissed in part*, 345 N.C. 749, 483 S.E.2d 440 (1997); *State v. Gregory*, 32 N.C. App. 762, 764, 233 S.E.2d 623, 624 (evidence defendant had on a previous occasion received stolen goods admissible under Rule 404(b) to show defendant knew goods in question were stolen), *disc. review denied*, 292 N.C. 732, 236 S.E.2d 701 (1977).

In this case, Plaintiffs presented evidence regarding cracks in approximately thirty other houses constructed by Roberts Construction between 1994 and 1996. These other houses were constructed using the same slab on grade method used by Roberts Construction to construct Plaintiffs' house, and Wilson testified these houses contained cracks in their foundations and floors that were similar to the cracks found in Plaintiffs' house. Additionally, Wilson testified that, similar to Plaintiffs' house, these other houses did not meet various building code standards for average PSI, concrete thickness, and compaction below the slab. Based on this evidence of cracks in the floors and foundations of these other houses, a reasonable person could find Roberts Construction had actual knowledge of structural defects in Plaintiffs' house at the time Plaintiffs purchased their house.[3] Accordingly, the trial court properly denied Defendants' motion for a directed verdict on the issue of fraud.[4]

3. Defendants argued to this Court the evidence of the cracks in the other houses constructed by Roberts Construction was not properly admitted under Rule 404(b) to prove knowledge by Roberts Construction that Plaintiffs' house was constructed with structural defects because there is no evidence Defendants had knowledge of these other defects. Although this issue was not raised in the trial court and thus is not properly before this Court, N.C.R. App. P. 10(b)(1), we nonetheless note there is no requirement under Rule 404(b) that the record contain evidence Roberts Construction had knowledge of the structural defects in the other houses in order for this evidence to be admissible to show Roberts Construction had actual knowledge of the structural defects in Plaintiffs' house. *See Sisk*, 123 N.C. App. at 368, 473 S.E.2d at 353.

4. Defendants do not contend there is insufficient evidence of the additional elements of fraud and we, therefore, do not address these other elements. *See* N.C.R. App. P. 28(b)(5).

## III

### *Unfair and Deceptive Trade Practices*

**[3]** Defendants argue the trial court erred by entering judgment against Roberts Construction and Bobby Roberts for unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. We disagree.

### *Roberts Construction*

"Proof of fraud . . . necessarily constitute[s] a violation of the prohibition against unfair and deceptive acts" under section 75-1.1. *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975).

In this case, the trial court based its conclusion of law that Roberts Construction had engaged in unfair and deceptive trade practices, in pertinent part, on the judgment for fraud entered against Roberts Construction. Judgment for violation of section 75-1.1 was, therefore, properly entered against Roberts Construction.

### *Bobby Roberts*

In this case, the trial court based its conclusion of law Bobby Roberts had engaged in unfair and deceptive trade practices on the following three findings by the jury: (1) Bobby Roberts "[e]ngage[d] in the profession of general contractor with respect to [Plaintiffs' house] without having obtained a general contractor's license as required by law"; (2) Bobby Roberts "[c]onceal[ed] material facts relevant to [Plaintiffs' house] from . . . Plaintiffs which he knew at the time of purchase that . . . Plaintiffs could not discover in the exercise of due diligence"; and (3) Bobby Roberts "[f]alsely represent[ed] to . . . Plaintiffs that [Plaintiffs' house] had been constructed in substantial conformity with plans and specifications approved [for the house]."

Defendants argue in their brief to this Court that a judgment for unfair and deceptive trade practices may not be based upon Bobby Robert's "lack of an appropriate general contractor's license"; however, Defendants do not argue in their brief to this Court that the other two grounds cited by the trial court are insufficient to support a judgment for unfair and deceptive trade practices. The sufficiency of these other two grounds, therefore, is not properly before this Court. *See* N.C.R. App. P. 28(b)(5). Accordingly, assuming, without deciding, that the failure of Bobby Roberts to obtain a general contractor's license is insufficient to support a claim for unfair and

deceptive trade practices, the unfair and deceptive trade practices judgment is nevertheless supported by these other two grounds. *See Bailey v. Gooding*, 60 N.C. App. 459, 463, 299 S.E.2d 267, 270 (judgment based on more than one ground presumed valid when one ground is incorrect but other grounds are correct), *disc. review denied*, 308 N.C. 675, 304 S.E.2d 753 (1983).

## IV

### *Negligence*

**[4]** The elements of a cause of action for negligence are the existence of a legal duty, breach of that duty, and injury proximately resulting from the breach. *Hunt v. N.C. Depart. of Labor*, 348 N.C. 192, 195, 499 S.E.2d 747, 749 (1998).

The single issue raised by Defendants regarding Bryant Robert's negligence is whether the record contains substantial evidence Bryant Roberts was the general contractor for the construction of Plaintiffs' house.[5] Bobby Roberts and McFarland testified that Bryant Robert's general contractor's licence was used to build Plaintiffs' house. A reasonable person could find based on this evidence that Bryant Roberts was the general contractor for Plaintiffs' house. *See* N.C.G.S. § 87-1 (1999). Accordingly, the trial court properly denied Defendants' motion for directed verdict on the issue of Bryant Roberts' negligence.

## V

### *Express Warranty*

**[5]** Defendants argue Plaintiffs did not give written notice of the alleged breach of express warranty as required by the terms of the warranty and, therefore, Roberts Construction was entitled to a directed verdict on the issue of breach of express warranty. Plaintiffs contend their complaint filed in this case provided Roberts Construction with written notice.

An express warranty is contractual in nature, *Wyatt v. Equipment Co.*, 253 N.C. 355, 358, 117 S.E.2d 21, 24 (1960), and its

---

5. Defendants seem to concede that if Bryant Roberts was the general contractor for the construction of Plaintiffs' house then he owed Plaintiffs a duty to supervise the construction of the house, and we agree. *See Vogel v. Supply Co. and Supply Co. v. Developers, Inc.*, 277 N.C. 119, 130, 177 S.E.2d 273, 280 (1970) (purpose of requiring licencing of general contractors under section 87-1 is to "protect the public from incompetent builders").

terms are therefore construed in accordance with their plain meaning, *Brown v. Scism,* 50 N.C. App. 619, 623, 274 S.E.2d 897, 899, *disc. review denied,* 302 N.C. 396, 276 S.E.2d 919 (1981).

In this case, the breach of express warranty alleged by Plaintiffs is that their house was not "constructed in substantial conformity with the plans and specifications . . . which have been approved [for the house]." The terms of the express warranty state Plaintiffs must give written notice of such alleged breach to Roberts Construction "within one year from the date of original conveyance of title." Assuming, without deciding, that service of a complaint is sufficient to give written notice under the terms of the parties' express warranty, Plaintiffs' complaint does not allege Roberts Construction failed to construct Plaintiffs' house "in substantial conformity with the plans and specifications . . . which have been approved [for the house]."[6] The complaint, therefore, did not provide Roberts Construction with notice of this alleged breach. Accordingly, because the record does not contain any evidence Plaintiffs provided Roberts Construction with written notice of the alleged breach, Roberts Construction was entitled to a directed verdict on the issue of breach of express warranty.

VI

*Implied Warranty of Habitability*

[6] Defendants argue there is no evidence in the record that the existence of cracks in Plaintiffs' house created a breach of the implied warranty of habitability. We disagree.

The doctrine of implied warranty of habitability requires that a dwelling and all of its fixtures be "sufficiently free from major structural defects, and . . . constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction." *Hartley v. Ballou,* 286 N.C. 51, 62, 209 S.E.2d 776, 783 (1974). The test for breach of implied warranty of habitability is "whether there is a failure to meet the prevailing standard of workmanlike quality" in the construction of the house, and whether a defendant has breached the implied warranty of habitability is a question of fact to be determined by the jury. *Gaito v. Auman,* 313 N.C. 243, 252, 327 S.E.2d 870, 877 (1985).

---

6. While Plaintiffs' complaint did allege other theories of breach of express warranty against Roberts Construction, those theories were not submitted to the jury in this case.

LIVING CENTERS-SOUTHEAST, INC. v. N. C. DEP'T OF HEALTH & HUMAN SERVS.

[138 N.C. App. 572 (2000)]

In this case, Wilson testified regarding numerous cracks in the interior and exterior of Plaintiffs' house, including cracks in the floor, foundation wall, and sheetrock. Wilson stated Plaintiffs' foundation did not conform to the minimum requirements of the building code and plans, and the construction of the foundation created a "major structural defect." Based on this evidence, a reasonable juror could find Plaintiffs' house was not free from major structural defects, and the foundation was not constructed in a workmanlike manner. Accordingly, the trial court properly denied Defendants' motion for a directed verdict on the issue of breach of implied warranty of habitability.

Defendants have raised other arguments in their brief to this Court. We either reject these arguments as being without merit or refuse to address them because they are in violation of Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure. *See* N.C.R. App. P. 28(b)(5).

Reversed in part and affirmed in part.

Judges TIMMONS-GOODSON and HORTON concur.