PETER BREVORKA AND WIFE CAROLE BREVORKA, PLAINTIFFS V.
WOLFE CONSTRUCTION, INC., DEFENDANT

No. COA02-5

(Filed 31 December 2002)

**1. Appeal and Error—appealability—denial of motion for
   stay—right to arbitrate**

Although defendant's appeal in a claim arising out of the pur-
chase of a new home from the denial of its motion to stay plain-
tiffs' action pending arbitration is an appeal from an interlocutory
order, it may be immediately appealed because the right to arbi-
trate a claim affects a substantial right.

**2. Arbitration and Mediation—denial of motion to stay
   proceeding—signing enrollment form with arbitration
   provision**

The trial court erred in a claim arising out of the purchase of
a new home by denying defendant's motion to stay plaintiffs'
action pending arbitration even though plaintiffs contend the par-
ties' signing of an enrollment form for a limited warranty agree-
ment containing an arbitration provision does not constitute a
contract, because: (1) by signing an enrollment form, the signato-
ries are by definition committing to something; and (2) one who
signs a written contract is bound by the contract unless the fail-
ure to read is justified by some special circumstances, and there
are no special circumstances in this case.

**3. Arbitration and Mediation—denial of motion to stay pro-
   ceeding—scope of agreement**

The trial court erred in a claim arising out of the purchase of
a new home by denying defendant's motion to stay plaintiffs'
action pending arbitration even though plaintiffs contend their
claims for breach of implied warranty of habitability or work-
manlike construction, breach of express warranties, willful mis-
representation, and negligent misrepresentation do not arise
within the scope of the arbitration agreement, because the claims
are either excluded by the terms of the parties' agreement or fall
within the scope of the arbitration provision.

Chief Judge EAGLES dissenting.

[155 N.C. App. 353 (2002)]

Appeal by defendant from order entered 3 October 2001 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 28 October 2002.

*Alexander, Ralston, Speckhard & Speckhard, L.L.P., by Stanley E. Speckhard, for plaintiff-appellees.*

*Tuggle Duggins & Meschan, P.A., by Kenneth J. Gumbiner, for defendant-appellant.*

THOMAS, Judge.

Defendant, Wolfe Construction, Inc., appeals the denial of its motion to stay plaintiffs' action pending arbitration.

Defendant contends the trial court erred in concluding that plaintiffs' claims for relief do not arise under the parties' limited warranty agreement and are, therefore, not subject to an arbitration provision. For the reasons herein, we reverse.

On 26 May 1999, plaintiffs, Peter and Carole Brevorka, signed an "Offer To Purchase and Contract" for a new house constructed by defendant at 25 Rosebay Lane, Greensboro, North Carolina. Plaintiffs closed on the house on 4 August 1999. Three weeks later, on 25 August 1999, plaintiffs received a letter from defendant offering them an extended limited warranty, referred to as the Quality Builders Warranty Corporation Limited Warranty Agreement. On 27 August 1999, plaintiffs signed the enrollment form, acknowledging their receipt of the limited warranty and acceptance of its terms. The enrollment form reads, in pertinent part:

C. Both the Builder and the purchaser(s) must sign this Enrollment form. By signing, the purchaser acknowledges that he has read the attached Agreement and has received a copy of this page and the Agreement itself.

The agreement contains a detailed description of all the express warranties applicable to plaintiffs' home, some of which extend up to ten years, and includes the following disclaimer:

10. Other than the Expressed Warranties contained herein, there are no other warranties expressed or implied including Implied Warranty of Merchantability or Implied Warranty for Particular Purpose.

It also contains a detailed four step Complaint and Claim Procedure. Step Four of that procedure includes an arbitration provision which reads, in pertinent part:

> D. Step Four. If you disagree with the investigator's report, you have (30) days to notify QBW and the Builder, in writing, that you disagree. In such event, disputes on covered items shall be submitted for arbitration to the American Arbitration Association (AAA) or such other independent arbitration service as may be designated by QBW, for resolution in accordance with the rules and regulations of the AAA or such other service. You must pay the cost of arbitration when filing a claim. *Such arbitration shall be a condition precedent to the commencement of any litigation by the homeowner or builder arising out of or connected with the rights and obligations created by this Agreement.* (Emphasis added)

. . . .

If the complaint and claim procedure is not followed and the arbitration provision is not honored, the agreement states:

> If you institute legal proceedings against the Builder or QBW for any obligation arising or claimed to have arisen under this Agreement prior to giving the Builder or QBW the proper notices and opportunities to cure provided under this Agreement and prior to using the dispute settlement procedure herein, you agree to indemnify the Builder and QBW for all costs and expenses of such litigation, including reasonable attorneys' fees, regardless of whether you have an otherwise legitimate claim under this Agreement. . . .

Plaintiffs filed the instant complaint on 16 February 2001 asserting claims against defendant for breach of the implied warranty of habitability or workmanlike construction, breach of express warranties, willful misrepresentation and negligent misrepresentation. Plaintiffs allege the house was constructed "in a manner contrary to and different from the agreement between the parties," "in a defective manner, with poor and faulty workmanship," "in a careless and negligent manner," and not "in compliance with applicable building codes and regulations." Plaintiffs' complaint identifies twenty-two conditions which they claim "constitute major structural defects." Plaintiffs also set forth seven express "warranties and contractual obligations" allegedly breached by defendant. Finally, plaintiffs allege

defendant and its agents and employees willfully and negligently made certain false representations prior to and in connection with the contract for the purchase of the house.

Defendant filed an answer denying the essential allegations of plaintiffs' complaint and asserting numerous affirmative offenses, and a counterclaim for breach of contract and unfair and deceptive trade practices. Defendant later filed a motion to stay plaintiffs' action pending arbitration and a request for attorneys' fees.

Following a hearing on defendant's motion, the trial court found that plaintiffs had signed the limited warranty agreement but concluded their claims did not arise under the agreement. Therefore, the arbitration provision did not apply and defendant was not entitled to a stay of plaintiffs' action.

Defendant contends all of plaintiffs' claims fall within the scope of the limited warranty agreement and are, therefore, subject to arbitration prior to litigation. Plaintiffs counter that: (1) no agreement to arbitrate exists because the limited warranty agreement is not a contract between the parties; and (2) the rights and obligations they seek to enforce predate and exist independent of the limited warranty.

[1] Initially, we note that the trial court's order is interlocutory because it fails to resolve plaintiffs' claims. *See Raspet v. Buck*, 147 N.C. App. 133, 135, 554 S.E.2d 676, 677 (2001). While interlocutory orders are generally not immediately appealable, this Court has consistently held that an order denying arbitration may be immediately appealed because it involves a substantial right, the right to arbitrate a claim, which may be lost if appeal is delayed. *Id.*; *Martin v. Vance*, 133 N.C. App. 116, 119, 514 S.E.2d 306, 308 (1999); *Burke v. Wilkins*, 131 N.C. App. 687, 688, 507 S.E.2d 913, 914 (1998).

In considering a motion to compel arbitration, the trial court must determine (1) whether the parties have a valid agreement to arbitrate, and (2) whether the subject in dispute is covered by the arbitration agreement. *Ragan v. Wheat First Sec., Inc.*, 138 N.C. App. 453, 455, 531 S.E.2d 874, 876 (citing *Paine Webber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)), *disc. review denied*, 353 N.C. 268, 546 S.E.2d 129 (2000). The trial court's conclusion is reviewable *de novo* by this Court. *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678.

[2] We first address plaintiffs' argument that there is no agreement to arbitrate because the limited warranty agreement does not constitute

a contract between the parties. Specifically, plaintiffs contend their signatures on the enrollment form merely acknowledge they received and read the agreement but do not bind them to its terms, in particular the arbitration provision. We disagree.

"Enrollment" is defined as "the act or an instance of enrolling," while "enrolling" is defined as "entering one's name on a list, *esp.* as a commitment to membership." Oxford American Dictionary (1999), p. 319. By signing an enrollment form, the signatories are by definition committing to something. The enrollment form here repeatedly refers to the limited warranty agreement. Thus, we reject plaintiffs' contention that they are not contractually bound by the terms of the limited warranty.

Included in the limited warranty is an agreement to arbitrate any disputes or claims arising thereunder. The duty to read an instrument, or have it read before signing it, is a positive one, and one who signs a written contract without reading it when able to do so is bound by the contract unless the failure to read is justified by some special circumstances. *See Massey v. Duke University*, 130 N.C. App. 461, 464-65, 503 S.E.2d 155, 158 (1998); *see also Mills v. Lynch*, 259 N.C. 359, 362, 130 S.E.2d 541, 543-44 (1963); *Davis v. Davis*, 256 N.C. 468, 472, 124 S.E.2d 130, 133 (1962). There are no special circumstances present here. Accordingly, we conclude the parties have a valid agreement to arbitrate all claims arising under the limited warranty.

[3] Next, we determine whether plaintiffs' claims for relief fall within the scope of the arbitration agreement. *See Rodgers Builders v. McQueen*, 76 N.C. App. 16, 23, 331 S.E.2d 726, 731 (1985) ("only those disputes which the parties agreed to submit to arbitration may be so resolved"). In so doing, we are guided by the strong state and federal public policy favoring the settlement of disputes by arbitration. *See Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785 (1983), *superseded by statute on other grounds as stated in Bradford-Scott Data v. Physician Computers Network*, 128 F.3d 504 (7th. Cir. 1997); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir. 1984); *Johnston County v. R. N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992); *Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986); *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984); *Raspet*, 147 N.C. App. at 135, 554 S.E.2d at 678; *Rodgers Builders*, 76 N.C. App. at 24-25, 331 S.E.2d at 731. "[This] strong public policy requires that the courts resolve any doubts con-

cerning the scope of arbitrable issues in favor of arbitration." *Johnston County*, 331 N.C. App. at 91, 414 S.E.2d at 32.

Plaintiffs' complaint sets forth claims for breach of the implied warranty of habitability or workmanlike construction, breach of express warranties, willful misrepresentation and negligent misrepresentation. We consider each in turn.

In *Hartley v. Ballou*, 286 N.C. 51, 209 S.E.2d 776 (1974), the Supreme Court stated the implied warranty governing the sale of a dwelling by the builder-vendor as follows:

> [I]n every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together will all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee.

*Id.* at 62, 209 S.E.2d at 783; *accord Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 200, 225 S.E.2d 557, 566-67 (1976). This implied warranty arose in the instant case when the parties closed on the house and plaintiffs received the deed.

However, the law allows a builder and a purchaser to enter into a binding agreement that such implied warranty does not apply to their particular transaction. *Griffin*, 290 N.C. at 202, 225 S.E.2d at 567. Such exclusion must be clear and unambiguous and reflect that the parties intend such a result. *Id.* Here, the limited warranty agreement, which was signed by both parties, states that, other than the express warranties contained therein, "there are no other warranties express or implied" covering plaintiffs' purchase of the house. The words "there are no other warranties express or implied" are sufficient to exclude the implied warranty of habitability or workmanlike construction from the parties' transaction. Accordingly, plaintiffs contractually relinquished their right to sue in a court of law for breach of such implied warranty.

Plaintiffs also allege defendant breached certain express warranties which predate and exist independent of the limited warranty agreement. They claim that such warranties can be found in the purchase contract, homeowner's manual and closing punch list.

However, the "Offer To Purchase and Contract" in this case makes no mention of any express warranties and contains a standard merger clause declaring that the entire agreement of the parties is contained in the writing. *See Clifford v. River Bend Plantation, Inc.*, 312 N.C. 460, 463, 323 S.E.2d 23, 25 (1984). Further, the disclaimer provision in the limited warranty agreement expressly disclaims any and all express warranties other than those contained therein. Accordingly, we conclude that the only express warranties contained in the parties' transaction for the house are those stated in the agreement. Pursuant to the arbitration provision, any dispute concerning those warranties must be submitted to arbitration prior to litigation.

In their remaining claims, plaintiffs allege defendant willfully misrepresented certain material facts and negligently supplied false information in connection with the contract for the purchase of the house. However, courts generally agree "that whether a claim falls within the scope of an arbitration clause and is thus subject to arbitration depends not on the characterization of the claim as tort or contract, but on the relationship of the claim to the subject matter of the arbitration clause." *Rodgers Builders*, 76 N.C. App. at 24, 331 S.E.2d at 731.

In *Bos Material Handling v. Crown Controls Corp.*, 137 Cal. App. 3d 99, 105-06, 186 Cal. Rptr. 740, 742-43 (1982), the court interpreted an arbitration clause in a dealer agreement. The clause provided that "[a]ny controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration . . . ." That court held the language to be sufficiently broad to include tort as well as contract claims which " 'have their roots in the relationship between the parties which was created by the contract,' " including the plaintiff's claims for wrongful termination of the dealership, fraud, unfair competition, restraint of trade, and wrongful misrepresentation.

Similarly, in *Rodgers Builders*, this Court interpreted the language in an arbitration clause that "[a]ll claims, disputes and other matters in question . . . arising out of, or relating to, the Contract Documents or the breach thereof, . . . shall be decided by arbi-

tration . . ." It was held sufficiently broad to encompass that plaintiff's claims for tortious conduct on the part of defendants which occurred in connection with the formation, performance and alleged breach of the contract between the parties. These included the plaintiff's claim for punitive damages based on the defendant's negligent or fraudulent misrepresentation as to the owner of the property to which the contract related. *Rodgers Builders*, 76 N.C. App. 25-26, 331 S.E.2d at 732.

The language of the arbitration provision here is likewise sufficiently broad to include plaintiffs' claims for willful and negligent misrepresentation. The claims concern whether the house was constructed in a workmanlike manner and in accordance with the express warranties plaintiffs allege existed independent of the limited warranty agreement. However, any such express warranties were disclaimed by plaintiffs when they signed the enrollment form for the limited warranty. The only warranties that now exist are those present in the agreement.

The arbitration provision applies to any "covered items" and matters "arising out of or connected with the rights and obligations created by the [limited warranty]." We conclude there is a sufficiently strong connection between plaintiffs' misrepresentation claims and the express warranties set forth in the parties' agreement to bring the claims within the arbitration provision.

The limited warranty agreement entered into by the parties is valid and effective and the claims raised in the complaint are either excluded by the terms of the parties' agreement or fall within the scope of the arbitration provision. Accordingly, the trial court erred in denying defendant's motion to stay plaintiffs' action pending arbitration. The order is reversed and the cause remanded for entry of a stay of plaintiffs' action pending arbitration.

Reversed and remanded.

Judge TYSON concurs.

Chief Judge EAGLES dissents in a separate opinion.

EAGLES, Chief Judge, dissenting.

I respectfully dissent from the portion of the majority's opinion which holds that the "plaintiffs contractually relinquished their right to sue in a court of law for breach of" implied warranty. The majority

concludes that language in the limited warranty agreement served to waive plaintiffs' implied warranty of habitability or workmanlike quality of construction. I disagree.

"The doctrine of implied warranty of habitability requires that a dwelling and all of its fixtures be 'sufficiently free from major structural defects, and . . . constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction.' " *Allen v. Roberts Constr. Co.*, 138 N.C. App. 557, 571, 532 S.E.2d 534, 543, *disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000) (quoting *Hartley v. Ballou*, 286 N.C. 51, 62, 209 S.E.2d 776, 783 (1974)). "The implied warranty of workmanlike quality of construction [or habitability] does not exist by reason of a representation or inducement made by the builder-vendor, nor does it exist by reason of a representation or inducement made by the builder's sales agent, the real estate broker. Instead, it exists *by operation of law*." *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 202, 225 S.E.2d 557, 568 (1976) (emphasis in original).

"[A] builder-vendor and a purchaser could enter into a binding agreement that such implied warranty would not apply to their particular transaction." *Id.* at 202, 225 S.E.2d at 567. However, "[s]uch an exclusion, if desired by the parties to a contract for the purchase of a residence, *should be accomplished by clear, unambiguous language, reflecting the fact that the parties fully intended such result.*" *Id.* at 202, 225 S.E.2d at 568 (emphasis added).

Here, the language that purports to exclude the warranties is: "Other than the Expressed Warranties contained herein, there are no other warranties expressed or implied including Implied Warranty of Merchantability or Implied Warranty for Particular Purpose, which implied warranties are specifically excluded." This language does not clearly and unambiguously show that both parties intended to exclude the implied warranty of habitability or workmanlike quality of construction.

Further, the limited warranty agreement in its "General Terms Governing Interpretation and Operation" provides that: "This agreement is separate and apart from your contract with your Builder. It cannot be altered or amended in any way by any other agreement which you have. Contractual disputes shall not involve [Quality Builders Warranty Corporation ("QBW")]."

Here, the defendant is Wolfe Construction, the residential homebuilder from whom plaintiffs bought their home. "[A] *builder-vendor*

impliedly warrants to the initial purchaser that a house and all its fixtures will provide the service or protection for which it was intended under normal use and conditions." *Lyon v. Ward*, 28 N.C. App. 446, 450, 221 S.E.2d 727, 729 (1976) (emphasis added). "The warranty arises by operation of law and imposes strict liability on the *builder-vendor*." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 792, 561 S.E.2d 905, 909 (2002) (emphasis added). The limited warranty agreement, by its terms, "is separate and apart from" plaintiffs' contract with Wolfe Construction.

Accordingly, I would hold that the plaintiffs are not barred by the limited warranty agreement with QBW from maintaining an action for breach of the implied warranty of habitability or workmanlike quality of construction against the builder, Wolfe Construction. For these reasons, I would affirm the order of the trial court.