BASS v. PINNACLE CUSTOM HOMES, INC.

[163 N.C. App. 171 (2004)]

———————————

RODNEY A. BASS AND WIFE, SHERRI FAUCETTE BASS, PLAINTIFFS v. PINNACLE CUSTOM HOMES, INC., DEFENDANT

No. COA03-248

(Filed 2 March 2004)

**1. Warranties— waiver—implied warranty of habitability**

The implied warranty of habitability from the construction of a house was waived by limited warranty language that unambiguously showed that both parties intended to waive the implied warranty of habitability and all other warranties.

BASS v. PINNACLE CUSTOM HOMES, INC.

[163 N.C. App. 171 (2004)]

**2. Warranties— exclusion of other warranties—no ambiguity**

There was no patent ambiguity in a limited warranty that excluded all other warranties where the language was not susceptible to disagreement.

**3. Arbitration and Mediation— arbitration—required by language of agreement**

The trial court did not err by requiring plaintiff to submit claims to arbitration where there was a valid agreement to arbitrate and the language of the arbitration agreement was broad enough to include plaintiff's claim.

Appeal by plaintiffs from judgment entered 4 April 2001 by Judge Orlando Hudson in Durham County Superior Court and order entered 13 December 2002 by Judge A. Leon Stanback, Jr., in Durham County Superior Court. Heard in the Court of Appeals 2 December 2003.

*Law Office of Robert B. Jervis, P.C., by Robert B. Jervis, for plaintiff appellants.*

*Robert R. Chambers for defendant appellee.*

McCULLOUGH, Judge.

On 5 March 1997, plaintiffs Rodney and Sherri Bass entered into a contract which obligated defendant, Pinnacle Custom Homes, Inc., to construct and sell a house to be built at 109 Springmoor Lane in Durham, North Carolina. The contract included a new construction addendum which mentioned some warranties. However, at the time of closing, plaintiffs accepted a 2-10 Home Buyers Warranty which had language that purported to waive all other warranties.

During construction and after completion of the home, plaintiffs began to complain about various defects in the home. Plaintiffs filed suit on 25 May 1999 alleging breaches of implied and express warranties. Defendant filed an answer and pleaded an arbitration agreement as an affirmative defense. Defendant also moved for an order staying further judicial proceedings pending arbitration. Plaintiffs filed an amended complaint in which they asserted claims for fraudulent and/or negligent misrepresentation, nuisance, and deceptive trade practices.

On 4 April 2001, the trial court found that all of plaintiffs' claims in the original complaint and the proposed amended complaint arose

under or were related to the warranty. The court further found that the parties agreed to resolve all of their disputes through binding arbitration. Finally, the court ordered that the action be stayed pending arbitration of the claims.

An arbitration hearing was held on 16 May 2002, and the Honorable Roderic Leland rendered his award on 8 June 2002. On 4 September 2002, plaintiffs asked the trial court to vacate and/or modify the arbitration award. Defendant moved to confirm the arbitration award on 27 September 2002. On 13 December 2002, the trial court entered an order confirming the arbitration award. Plaintiffs appealed.

On appeal, plaintiffs argue that the trial court erred by: (I) finding that plaintiffs waived the implied warranty of habitability, (II) enforcing a contract that had a patent ambiguity, and (III) requiring plaintiffs to submit all their claims to arbitration. We disagree and affirm the orders of the trial court.

I. Waiver of the Implied Warranty of Habitability

[1] Plaintiffs first argue that they did not waive the implied warranty of habitability. We disagree.

"The doctrine of implied warranty of habitability requires that a dwelling and all of its fixtures be 'sufficiently free from major structural defects, and . . . constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction.'" *Allen v. Roberts Constr. Co.*, 138 N.C. App. 557, 571, 532 S.E.2d 534, 543, *disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000) (quoting *Hartley v. Ballou*, 286 N.C. 51, 62, 209 S.E.2d 776, 783 (1974)). "[A] builder-vendor and a purchaser could enter into a binding agreement that such implied warranty would not apply to their particular transaction." *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 202, 225 S.E.2d 557, 567 (1976). However, "[s]uch an exclusion, if desired by the parties to a contract for the purchase of a residence, should be accomplished by clear, unambiguous language, reflecting the fact that the parties fully intended such result." *Id.* at 202, 225 S.E.2d at 568.

We believe that the language in the 2-10 Home Buyers Warranty constituted an express waiver of the implied warranty of habitability: Section VII provides in pertinent part:

THIS IS AN EXPRESS LIMITED WARRANTY OFFERED BY YOUR BUILDER. To the extent possible under the law of your

state, *all other warranties*, express or implied, including but not limited to *any implied warranty of habitability*, are hereby disclaimed and waived. No one can add to or vary the terms of this Warranty, orally or in writing. (Emphasis added.)

This language unambiguously shows that both parties intended to waive *all other warranties*, including the *implied warranty of habitability*.

In a few key respects, the case at bar differs from *Brevorka v. Wolfe Constr., Inc.*, 155 N.C. App. 353, 573 S.E.2d 656 (2002), *rev'd per curiam*, 357 N.C. 566, —— S.E.2d —— (2003). In *Brevorka*, our Supreme Court adopted the reasoning of the dissent written by Chief Judge Eagles. There, the language purporting to exclude the warranties was as follows:

Other than the Expressed Warranties contained herein, there are no other warranties expressed or implied including Implied Warranty of Merchantibility [sic] or Implied Warranty for Particular Purpose, which implied warranties are specifically excluded.

*Brevorka*, 155 N.C. App. at 361, 573 S.E.2d at 661. The Court determined that the language did not show both parties' clear intent to waive the implied warranty of habitability or workmanlike quality of construction. *Id.* The Court further noted that the parties signed an additional limited warranty agreement which, by its terms, was "separate and apart" from plaintiff's contract with the builder. *Id.* at 361-62, 573 S.E.2d at 661-62. For these reasons, plaintiff was permitted to maintain an action for breach of the implied warranty of habitability or workmanlike construction against the builder. *Id.* at 362, 573 S.E.2d at 662.

We believe that the present case is distinguishable from *Brevorka* because the 2-10 Home Buyers Warranty here unambiguously waived the implied warranty of habitability and all other warranties. This case is also unlike *Brevorka* because there is not an additional warranty that was intended to be "separate and apart" from the 2-10 Home Buyers Warranty. Instead, the 2-10 Home Buyers Warranty in this case was designed to be the sole warranty of the parties. It waived "all other warranties" and stated that "[n]o one can add to or vary the terms of this Warranty, orally or in writing." This assignment of error is overruled.

BASS v. PINNACLE CUSTOM HOMES, INC.

[163 N.C. App. 171 (2004)]

## II. Patent Ambiguity

[2] Plaintiffs further contend that the 2-10 Home Buyers Warranty should be set aside because there is a patent ambiguity in the contract.

An ambiguity exists in a contract if the language of that contract is fairly susceptible to either party's interpretation. *State ex rel. Utils. Comm'n v. Thrifty Call, Inc.*, 154 N.C. App. 58, 63, 571 S.E.2d 622, 626 (2002), *disc. review denied, appeal dismissed*, 357 N.C. 66, 579 S.E.2d 575 (2003). However, if the language is clear, the Court must enforce the contract as written. *Id.*

As we have indicated, the 2-10 Home Buyers Warranty was clear and unambiguous: "[A]ll other warranties, express or implied, including but not limited to any implied warranty of habitability, are hereby disclaimed and waived." Since this language is not susceptible to disagreement, we are required to enforce the contract as written. Accordingly, this assignment of error is rejected.

## III. Motion to Compel Arbitration

[3] Plaintiffs claim that the trial court erred by requiring them to submit all their claims to arbitration.

Under N.C. Gen. Stat. § 1-567.2(a) (2001) (repealed by Session Laws 2003-345, s. 1, effective January 1, 2004, and applicable to agreements to arbitrate made on or after that date), a contract provision that requires the parties to settle disputes by arbitration is valid, enforceable, and irrevocable unless the parties agree to the contrary. In considering a motion to compel arbitration, the trial court must determine (1) whether the parties have a valid agreement to arbitrate, and (2) whether the subject of the dispute is covered by the arbitration agreement. *Ragan v. Wheat First Sec., Inc.*, 138 N.C. App. 453, 455, 531 S.E.2d 874, 876, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 129 (2000). The trial court's conclusion regarding a motion to compel arbitration is reviewable *de novo*. *Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001). In North Carolina, there is a strong public policy favoring arbitration. *Id.* at 135, 554 S.E.2d at 678. Therefore, any doubts as to the scope of arbitrable disputes are to be resolved in favor of arbitration. *Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986).

In this case, plaintiffs acknowledge that there is a valid agreement to arbitrate. Therefore, the remaining issue is whether any of

plaintiffs' claims fall outside of that agreement. Plaintiffs first argue that they have a claim for breach of express warranty and the warranty to make necessary repairs because these warranties were mentioned in the new construction addendum. This claim has no merit because plaintiffs' acceptance of the 2-10 Home Buyers Warranty waived all other express and implied warranties, including those found in the new construction addendum.

Plaintiffs also suggest that their nuisance claim falls outside the scope of the arbitration agreement. Under N.C. Gen. Stat. § 1-567.2(a), parties can draft a contract provision which makes arbitration the method of resolving *any* controversy related to the contract. This Court has interpreted that to mean that "there is no legislative bar to arbitration of these claims as long as they arise out of or relate to the contract or its breach." *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 23, 331 S.E.2d 726, 731 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986). We have further indicated that "whether a claim falls within the scope of an arbitration clause . . . depends not on the characterization of the claim as tort or contract[.]" *Id.* at 24, 331 S.E.2d at 731. Instead, we must look at "the relationship of the claim to the subject matter of the arbitration clause." *Id.*

Here, the arbitration clause states that "[a]ny and all claims, disputes and controversies arising under or relating to this Agreement . . . shall be submitted to arbitration[.]" Mindful of our policy favoring arbitration, we conclude that this language is broad enough to include plaintiffs' nuisance claim. The alleged tortuous conduct in this case, defendant's unreasonable interference with plaintiffs' use and enjoyment of the property, arises under or is related to plaintiffs' contract with defendant. In fact, the very essence of plaintiffs' nuisance claim is that there were deficiencies in the building of the home, defendant did not correct the deficiencies, and plaintiffs suffered damages as a result.

We note that our decision is consistent with the holding in *Rodgers Builders*. There, the arbitration clause stated that, "[a]ll claims, disputes and other matters in question between the Contractor [plaintiff] and the Owner [McQueen Properties] arising out of, or relating to, the Contract Documents or the breach thereof, . . . shall be decided by arbitration . . . ." *Id.* at 18, 331 S.E.2d at 728. We concluded that this language was broad enough to include tort claims which occurred in connection with the formation, performance, and alleged breach of contract between the parties. *Id.* at 25,

331 S.E.2d at 732. Based on the facts of the present case and the precedent in *Rodgers Builders*, the trial court did not err in forcing plaintiffs to submit all their claims to arbitration.

We have considered plaintiffs' other arguments and find them to be unpersuasive. Therefore, the orders of the trial court are

Affirmed.

Judges WYNN and TIMMONS-GOODSON concur.