Talisman Software, Sys. & Servs., Inc. v. Atkins, 2016 NCBC 1.

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 5834

TALISMAN SOFTWARE, SYSTEMS &
SERVICES, INC.,
    Plaintiff,

    v.

CHARLES ATKINS,
    Defendant.

)
)
)
)
)
)
)
)
)
)

OPINION AND ORDER

THIS CAUSE was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases.

THIS MATTER comes before the Court upon Defendant Charles Atkins' (Pro Se) Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss"). Defendant's Motion to Dismiss cites as grounds for the motion Rules 12(b)(1), 12(b)(2),[1] 12(b)(3), and 12(h)(3)) of the North Carolina Rules of Civil Procedure ("Rule(s)"). On July 20, 2015, the Court held a hearing on the Motion to Dismiss.

THE COURT, having reviewed the Motion to Dismiss, the briefs in support of and in opposition to the Motion to Dismiss, the arguments of counsel at the hearing, and other appropriate matters of record, CONCLUDES as follows.

*Robinson Bradshaw & Hinson, P.A., by Adam K. Doerr, Esq. and Stephen M. Cox, Esq., for Plaintiff.*

*Charles A. Atkins, appearing* pro se.

---

[1] Despite referencing 12(b)(2), Atkins makes no argument regarding lack of personal jurisdiction. Atkins admits in his Answer that he is a resident and citizen of North Carolina.[1]

McGuire, Judge.

FACTUAL AND PROCEDURAL BACKROUND

Among other things, the Complaint alleges that:

1.      Plaintiff Talisman Software, Systems & Services, Inc. ("Talisman Software" or Plaintiff) is a Delaware corporation authorized to conduct business in North Carolina. Talisman Software provides services related to environmental risk management.  Robert Gray ("Gray") and Adam Kantor ("Kantor") are the Directors of Talisman Software, and during all times relevant to this lawsuit were the only members of its Board of Directors.

2.      On June 9, 2010, Talisman Software entered into an Employment Agreement ("Employment Agreement") with Defendant Charles Atkins ("Atkins" or Defendant). The Employment Agreement was entered into in England.  Talisman Software hired Atkins as its President and Chief Executive Officer at an annual salary of $250,000.  Section 16.5 of the Employment Agreement states: "This Agreement is governed by and shall be construed in accordance with English law and the parties irrevocably submit to the exclusive jurisdiction of the English courts."

3.      In or around spring 2011, without the knowledge of Talisman Software's Board of Directors, Atkins restructured his salary so that $50,000 was paid to Atkins as wages, and the remaining $200,000 was paid as a "consulting fee" to a company that Atkins controlled, Financial Engineering and Risk Management ("FERM").  Atkins had employment taxes only from the $50,000 being paid to him as wages, but not from the $200,000 paid to FERM. Atkins restructured his salary in this manner to avoid paying in excess of $2 million that he owed to the United States Internal Revenue Service ("IRS").

4.      In September 2011, Plaintiff received a Notice of Levy from the IRS requiring Talisman Software to turn over any "wages and salary" paid to Atkins.  Atkins directed

Talisman Software to apply the IRS levy only to the $50,000 paid to him as wages, but not to the remaining $200,000 paid to FERM.

5.     In November 2013, the Talisman Software Board of Directors determined that the compensation structure that Atkins had established was improper, and directed him to cease paying the consulting fee to FERM. Atkins did not follow this directive, and continued to make monthly payments to FERM in January and February 2014. Upon learning that Atkins had continued to make the improper payments, the Board directed Talisman Software's bank to freeze the Talisman Software bank account ("Talisman Software Account").

6.     On or about February 24, 2014, Atkins caused the Talisman Software Account to transfer $250,016 to FERM in five separate transactions.[2]  These payments were in addition to the wages and consulting fee being paid to Atkins and FERM.

7.     On February 26, 2014, Atkins brought suit in Durham County Superior Court (14-CVS-2136) against Talisman Software's directors, Gray and Kantor ("First Suit"). Atkins purported to file the First Suit both individually and derivatively on behalf of Talisman Software. On February 26, 2014, the Honorable Howard E. Manning issued temporary restraining order prohibiting Gray and Kantor from (i) interfering with Atkins' authority as Talisman Software's President and CEO, (ii) transferring Talisman Software assets, and (iii) interfering with Atkins' access to Talisman Software's bank accounts.

8.     On February 28, 2014, at the request of Gray and Kantor, the First Suit was designated to the North Carolina Business Court by Order of the Chief Justice of the North Carolina Supreme Court, and was assigned to the Honorable John R. Jolly, Jr. Following a series of hearings before and orders issued by Judge Jolly, the Court and the parties believed

---

[2] Although the Complaint does not so allege, the Court presumes the transfers took place prior to the Talisman Account being frozen.

the dispute between the parties had been resolved by (a) Atkins return of $175,000 of Talisman Software funds to Talisman Software, and (b) Atkins agreement to resign as President and CEO of Talisman Software. Talisman Software's Board of Directors believed that they had accounted for all missing funds and consented to removing a freeze that had been applied to several accounts controlled by Atkins.

9. On March 6, 2014, Judge Jolly dismissed all claims that Atkins had purportedly brought on behalf of Talisman Software. On March 21, 2014, Atkins dismissed all remaining claims in the lawsuit. On March 28, 2014, Atkins resigned as an employee of Talisman Software.

10. After the claims in the First Suit had been dismissed, Gray and Kantor discovered that Atkins had not returned all of the funds that he transferred from Talisman Software's accounts. Talisman Software alleges that Atkins has not returned and currently owes $75,000 to Talisman Software.

11. On December 16, 2014, Plaintiff Talisman Software filed its Verified Complaint against Atkins (Durham County No. 14 CVS 5834) ("Second Suit"). The Verified Complaint alleges claims against Atkins for Breach of Fiduciary Duty, Conversion, Breach of Contract, Constructive Trust, and Fraudulent Misrepresentation. The claims arise from allegations regarding Atkins actions during his tenure as President and CEO of Talisman Software and his failure to return all of Talisman Software's funds

12. On February 16, 2015, Atkins filed his Verified Defenses, Answer and Counterclaims ("Answer"). Atkins did not expressly raise improper venue as a separately titled affirmative defense. In response to the allegations in paragraph number 3 of the Verified Complaint, however, Atkins pleaded as follows:

> For the reasons listed herein, Defendant denies that jurisdiction and venue are proper. Talisman is a wholly owned subsidiary of Talisman Environmental. Talisman is effectively a North Carolina shell company that is owned and 100%

controlled by a shell Bermuda company (Talisman Environmental). There are no employees of either Talisman Environmental or Talisman, and all parties providing services to these entities do so as independent contractors. Accordingly, unless this Court determines or Plaintiffs agree that this Court has proper jurisdiction over Talisman, Talisman Environmental, their officers, directors, and shareholders, Defendant denies that venue and jurisdiction are proper.[3]

13. On May 11, 2015, Atkins filed his Motion to Dismiss. Atkins contends that Plaintiff's claims should be dismissed because this Court lacks jurisdiction since the parties are bound by the Talisman Environmental Services[4] Limited Shareholders' Agreement (the "Shareholders' Agreement")[5] to arbitrate under the Rules of the London Court of International Arbitration. Alternatively, Atkins contends that Talisman Software agreed to the jurisdiction of the English courts as the exclusive forum for resolving any disputes arising from the Employment Agreement, and that Talisman Software's claims in this Court must be dismissed.[6]

14. At the Court's request, in December 2015 the parties filed supplemental briefs addressing only the issue of the enforceability of the forum selection clause in the Employment Agreement.

15. Atkins' Motion to Dismiss has been fully briefed and argued and is ripe for determination.

ANALYSIS

---

[3] Atkins' Ver. Defenses, Answer and Countercl., Fifth Defense, ¶ 3.

[4] Talisman Environmental Services LTD ("TES") owns 100% of Talisman Software. Order and Opinion (11/18/15) at ¶ 7.

[5] Atkins has not moved to compel arbitration or to stay this action pending arbitration of Talisman Software's claims. Rather, he contends that this Court lacks jurisdiction over those claims.

[6] Both the Shareholder and Employment Agreements contain choice of law provisions stating that the agreements shall be "construed in accordance with English law." Neither party, however, has argued that English law should be applied to the question of whether the arbitration or forum selection agreements should be enforced, nor provided the Court with guidance on the English law regarding these issues. Both parties have relied exclusively on North Carolina law and the law of other United States jurisdictions in making their arguments. Accordingly, the Court will apply North Carolina in deciding the Motion to Dismiss.

16.     Atkins' primary argument in support of his Motion to Dismiss is that "[t]he Defendant and the Plaintiff have both agreed in writing that with regard to venue and jurisdiction, any and all disputes are to be governed by English law, subject to the jurisdiction of the UK courts and should be submitted to UK arbitration."[7] The Court will first address Atkins' contention that this Court lacks subject matter jurisdiction over Talisman Software's claims against him because it is bound by an arbitration agreement.

*Arbitration Provision*

17.     Atkins moves to dismiss the Verified Complaint under Rule 12(b)(1) on the grounds that Plaintiff is contractually required to arbitrate its claims.

> A motion under Rule 12(b)(1) may be used to attack two different types of defects. The first is the pleader's failure to comply with Rule 8(a)(1), which means that the allegations in the complaint are insufficient to show that the court has jurisdiction over the subject matter of the case. The other defect that may be challenged under Rule 12(b)(1) is the court's actual lack of jurisdiction over the subject matter, a defect that may exist despite the formal sufficiency of the allegations in the complaint.

*Harper v. City of Asheville*, 160 N.C. App. 209, 215 (2003) (citations, internal quotation marks, and ellipses omitted). "Subject matter jurisdiction enables a court to hear a case and is a prerequisite for a court to exercise judicial authority over a case and controversy." *Front St. Constr., LLC v. Colonial Bank, N.A.*, 2012 NCBC 25, 32 (N.C. Super. Ct. 2012) (citing *Harris v. Pembaur*, 84 N.C. App. 666, 667 (1987)). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Rule 12(h)(3).

18.     Atkins contends that any dispute between the parties must be arbitrated in London, England, under the arbitration clauses in the Shareholders' Agreement. The Shareholders' Agreement expressly provides that the agreement was entered into "by and

---

[7] Def.'s Br. Supp. Mot. Dismiss, p. 2.

between" seven specific parties. Charles Atkins was one of the parties identified as entering into the Shareholders' Agreement, but Talisman Software was not. In addition, Atkins was a signatory of the Shareholders' Agreement, but Talisman Software was not. The Shareholders' Agreement provides:

> [A]ny dispute arising out of or in connection with *this Agreement . . .* shall be finally resolved by arbitration under the Rules of the London Court of International Arbitration ("LCIA") in effect on the date of removal. . . . The place of arbitration shall be London, England.[8]

Atkins claims that the Employment Agreement was part and parcel of the Shareholders' Agreement and, accordingly, claims arising under the Employment Agreement are also subject to arbitration.[9] The Shareholders' Agreement, however, does not contain any reference to the Employment Agreement or to Atkins' employment as the President and CEO of Talisman Software.

19. Talisman Software contends that Atkins' Motion to Dismiss should be denied because its claims against Atkins in this lawsuit do not involve TES or the Shareholders' Agreement.[10] Instead, Talisman Software's claims arise from its "dispute with Atkins about the nature and structure of his compensation and Atkins' wrongful transfer and retention of Talisman Software's funds."[11] Accordingly, the arbitration clause in the Shareholders' Agreement does not apply to Talisman Software's claims in this action.

20. Despite the fact that Atkins has labeled his motion as one to dismiss, he has alleged the existence of an arbitration agreement, and therefore the Court must treat his motion as an application to stay litigation and compel arbitration pursuant to G.S. 1-569.7. *Novacare Orthotics and Prosthetics E. Inc. v. Speelman*, 137 N.C. App. 471, 478-79 (2000).

---

[8] Ex D. to Ex 2 to Atkins' Ver. Defenses, Answer and Countercl. (emphasis added).
[9] Def.'s Br. Supp.Mot. Dismiss, p. 3.
[10] Pl.'s Br. Opp. Mot. Dismiss, pp. 2-3.
[11] *Id.* at p. 3.

21.     "In considering a motion to compel arbitration, the trial court must determine (1) whether the parties have a valid agreement to arbitrate, and (2) whether the subject of the dispute is covered by the arbitration agreement." *Bass v. Pinnacle Custom Homes, Inc.*, 163 N.C. App. 171, 175 (2004); *Ellen v. A.C. Schultes of Md., Inc.*, 172 N.C. App. 317, 320 (2005) ("The trial court must determine whether the specific dispute is covered by the 'substantive scope of the agreement[,] and whether the parties  had a valid agreement to arbitrate[.]") (internal quotations and citation omitted).

22.     As a preliminary matter, the Court notes that Talisman Software was not a party to, nor signatory of, the Shareholders' Agreement.  Nevertheless, North Carolina courts have recognized that:

> The obligation and entitlement to arbitrate 'does not attach only to one who has personally signed the written arbitration provision.' Rather, 'well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties.

*Ellen*, 172 N.C. App. at 322 (citation omitted).  For example:

> When allegations against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement . . . the same result has been reached under a theory of equitable estoppel.

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000) (internal quotation and citations omitted); *Speedway Motorsports Int'l, Ltd. v. Bronwen Energy Trading, Ltd.*, 2009 NCBC LEXIS 17, **14-15 (N.C. Super. Ct. 2009) (holding that a nonsignatory to a contract may invoke an arbitration provision where there is a close relationship between the entities involved and where the claims against the nonsignatory are intertwined with the underlying contract obligations).

23.     In the instant case, the arbitration clause contained in the Shareholders' Agreement cannot be interpreted as binding on Talisman Software as the subsidiary of TES.

Talisman Software was not a party to the Shareholders' Agreement. Talisman Software has not made any claims against TES in this action, let alone ones intertwined with or founded upon the obligations contained in the Shareholders' Agreement. Nor do Talisman Software's claims against Atkins arise from any obligations placed upon Atkins by the Shareholders' Agreement. Accordingly, the Court concludes that Talisman Software and Atkins did not have an agreement to arbitrate. For the same reasons, the subject of the disputes giving rise to Talisman Software's claims against Atkins in this case are not covered by the arbitration clause in the Shareholders' Agreement. Accordingly, Atkins has failed to establish that Talisman Software should be bound by, or that Talisman Software's claims are covered by, the arbitration clause in the Shareholders' Agreement. Atkins' Motion to Dismiss Plaintiff's claims for lack of subject matter jurisdiction based on the arbitration agreement, and his motion to compel arbitration and stay the proceedings in this Court, should be DENIED.

*Forum Selection*

24. Atkins next argues that Talisman Software's claims should be dismissed because the forum-selection clause in the Employment Agreement provides that the agreement is subject to the exclusive jurisdiction of the English courts and venue is improper in this Court.[12]

25. The general rule is that contractual mandatory forum-selection agreements are enforced in North Carolina. *Lendingtree v. Anderson,* 228 N.C. App. 403, 408 (2013); *Mark Group Int'l, Inc. v. Still*, 151 N.C. App. 565, 568, (2002); *Internet E., Inc. v. Duro*

---

[12] Atkins also has taken the seemingly contradictory position that the Employment Agreement expired in August, 2010 and that "there was no contract between the [Atkins] and [Talisman Software]" in responding to Plaintiff's claim for breach of contract and in support of his own counterclaim for unjust enrichment. Answer ¶ 83; Def.'s Br. Supp. of Mot. Dismiss pp. 13-14. This Court has previously determined that Atkins own allegations establish that he continued to serve as Talisman Software's President and CEO under an implied contract encompassing the same terms as the Employment Agreement until March, 2010. Opinion and Order (11/18/15) ¶¶ 33-34.

*Commc'n, Inc.*, 146 N.C. App. 401, 403 (2001). "[M]andatory forum selection clauses recognized by our appellate courts have contained words such as 'exclusive' or 'sole' or 'only' which indicate that the contracting parties intended to make jurisdiction exclusive." *Printing Servs. of Greensboro, Inc. v. Am. Capital Group, Inc.,* 180 N.C. App. 70, 74 (2006). Here, the forum selection clause in the Employment Agreement provides that "the parties *irrevocably submit to the exclusive jurisdiction* of the English courts." (Emphasis added). The Court therefore concludes that the forum selection clause is unambiguous and mandatory. Once it is established that a forum selection clause is mandatory, a party "seeking to avoid enforcement of a forum selection clause carries a heavy burden and must demonstrate that the clause was the product of fraud or unequal bargaining power or that enforcement of the clause would be unfair or unreasonable." *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 146 (N.C. 1992). Talisman Software does not contend that it was fraudulently induced to enter into the forum selection agreement nor that Atkins secured the agreement due to his greater bargaining power. Instead, Talisman Software argues that the forum selection provision does not bar it from bringing suit in this Court because Atkins waived his improper-venue defense (a) by filing the First Suit in this Court in February 2014, and (b) by failing to adequately raise it in his Answer. In addition, Talisman Software argues that enforcing the forum selection clause would be unfair and unreasonable under the circumstances of this case.

26. Talisman Software first argues that Atkins waived his right to enforce the forum selection clause in the Employment Agreement by bringing the First Lawsuit in this same court in February 2014. *See id.* (A party "can impliedly waive [enforcement of a forum selection clause] through their 'actions or conduct.'"). Atkins filed the First Lawsuit, however, against Gray and Kantor. Although and Gray and Kantor were Talisman Software's directors, they were not parties or signatories to the Employment Agreement, and they were

not bound by its forum selection clause. In addition, the claims raised by Atkins in the First Lawsuit involved primarily corporate governance issues, including alleged breaches of fiduciary duty owed by Gray and Kantor to Talisman Software, and not claims arising from the Employment Agreement. Although the First Suit ultimately resulted in the spotlight being shown on Atkins' actions as President and CEO of Talisman Software, the Court cannot conclude that Atkins' filing of the First Lawsuit constituted a waiver of his right to enforce the forum selection clause in the Employment Agreement.

27.     Talisman Software also argues that Atkins waived his improper venue defense under the forum selection clause by "insufficiently raising it in his Answer," in accordance with Rule 12(b)(3).[13]   Talisman Software points out that Atkins' objection to venue appears to be based solely on his allegation that Talisman Software is a "shell company" and that jurisdiction and venue were improper unless its directors and parent company were also brought before the Court.[14] The Answer did not expressly raise the forum selection clause as the basis for the allegation of improper venue and, accordingly, did not unambiguously preserve the objection.[15]

28.     Rules 12(b)(3) and 12(h), read in conjunction, require that a party raise an objection of improper venue in either its answer or in a pre-answer motion pursuant to Rule 12, whichever the party files first. *Lendingtree*, 228 N.C. App. at 409; *Miller v. Miller*, 38 N.C. App. 95, 97 (1978); (Rule 12(b)(3) "requires that the motion be made at or before the time of filing of an answer."). "[P]arties must unambiguously raise and press venue objections" and "[t]he failure to raise the objection properly is a waiver of the defense."

---

[13] Pl.'s Br. on Forum Selection Clause pp. 6-9.
[14] *Id.*
[15] *Id.*

*Lendingtree*, 228 N.C. App. at 409 (citation omitted). In addition, a venue objection must be made "with specificity."). *Id.*

29. Atkins' Answer, while not a model of clarity, raises an objection to venue, but it did not expressly raise the forum selection clause as the basis of the objection. Nevertheless, "[e]ven if defendants properly raise a venue objection, they can impliedly waive the defense through their 'actions or conduct.'" *Id.* (citing *Simms v. Mason's Stores, Inc.*, 285 N.C. 145, 154 (1974)). Factors indicating waiver include: (i) failure to unambiguously raise and pursue a venue objection; (ii) participation in litigation; and (iii) unnecessary delay. *Id.* These factors are chiefly concerned with ensuring that a defendant does not unnecessarily delay in pressing a venue objection. *Simms*, 285 N.C. at 155 ("If the court considers a defendant's conduct sufficiently dilatory or inconsistent with the later assertion of [improper venue] such conduct will be declared a waiver.")

30. Applying these factors here, the Court cannot conclude that Atkins waived his objection to venue in this Court. While Atkins' objection to venue in the Answer was not specific and unambiguous, he did not unnecessarily delay in bringing the specific nature of his objection to Plaintiff's or the Court's attention. On April 8, 2015, less than two months after filing his Answer, Atkins objected to venue in this Court based on the forum selection clause in the Case Management Report filed jointly with Plaintiff.[16] A month later, Atkins expressly argued the issue in his motion to dismiss and supporting memorandum. With regard to the second factor, Talisman Software does not contend, and there is no evidence, that Atkins has participated in this litigation in any manner that would constitute a waiver

---

[16] Case Mgt. Report (4/8/15), ¶ m ("Defendant's position is that Plaintiff's complaint should be dismissed for several reasons one of which is that subject matter jurisdiction and venue are not proper. … the Talisman Employment Agreement and all of the corporate documents of Talisman and the Talisman Group of companies require that all disputes between and among those entities and the parties to those agreements, …, are governed by English law and subject to the jurisdiction of the English courts or to arbitration in London.").

of venue defense. The Court concludes that Atkins did not waive his venue objection through unnecessary delay.

31. Finally, Talisman Software argues that even if Atkins has not waived his right to enforce the forum selection clause in the Employment Agreement, permitting him to enforce it under the circumstances of this case would be "unfair and unreasonable." In part, Talisman Software maintains that Atkins "flouted this Court's order [in the First Suit] by failing to return over $75,000 in company funds to Talisman" and it would be unfair to permit him to enforce the forum selection clause "in a case stemming directly from these actions."[17] The Court agrees that it would be unfair and unreasonable to require Talisman Software to pursue its claims arising from Atkins' alleged failure to return all funds to Talisman Software following the resolution and dismissal of the First Suit. Atkins chose to pursue a lawsuit against Talisman Software's directors in Durham County Superior Court. That lawsuit was designated to this Court, and after multiple hearings, all claims were dismissed based on the understanding that Atkins had accounted for and returned all of Talisman Software's funds. It would be unfair and unreasonable to require Talisman Software to bring suit in England to attempt to recoup the remaining funds. Such claims in no sense arise from or under the Employment Agreement, and Talisman Software should not be bound by the forum selection clause with regard to these claims. *Hickox v. R&G Group Int'l, Inc.*, 161 N.C.App. 510, 512-14 (2003) (Contractual forum selection clause did not apply to claims between the parties that were not expressly covered by the clause). The Court concludes that Plaintiff's claims for conversion (Count II) and for negligent misrepresentation (Count V) arise from Atkins' conduct during and following the First Suit, and are not subject to the forum selection clause

---

[17] Pl.'s Br. on Forum Selection Clause p. 10.

in the Employment Agreement. Atkins' Motion to Dismiss Counts II and V should be DENIED.

32. The Court further concludes that Talisman Software's claims for breach of fiduciary duty (Count I), breach of contract (Count III), and constructive trust (Count IV) can fairly be characterized as arising from or under the Employment Agreement, and are encompassed within the forum selection clause. The claim for breach of contract alleges that Atkins breached the Employment Agreement itself. The Employment Agreement places numerous duties and obligations on Atkins that are implicated by the conduct alleged by Talisman Software in this action. Talisman Software alleges that Atkins breached fiduciary duties he owed to Talisman Software "by virtue of his positions as President and CEO." The imposition of the constructive trust requested in Count IV is dependent on the claim for breach of fiduciary duty. Accordingly, Atkins' Motion to Dismiss Counts I, III and IV should be GRANTED and those claims should be dismissed WITHOUT PREJUDICE.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

33. Atkins' Motion to Dismiss Plaintiff's claim for lack of subject matter jurisdiction based on the arbitration agreement is DENIED.

34. Atkins' motion to compel arbitration and stay the proceedings in this Court is DENIED.

35. Atkins' Motion to Dismiss Counts II and V of the Verified Complaint are DENIED.

36. Atkins' Motion to Dismiss Counts I, III and IV of the Verified Complaint are GRANTED, and Counts I, III and IV are dismissed WITHOUT PREJUDICE.

This the 4th day of January, 2016.

                            /s/ Gregory P. McGuire
                            Gregory P. McGuire
                            Special Superior Court Judge
                              for Complex Business Cases