Allscripts Healthcare, LLC v. Etransmedia Tech., Inc., 2016 NCBC 23.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 11860

ALLSCRIPTS HEALTHCARE, LLC )
             Movant, )
 )
        v. )
 )
ETRANSMEDIA TECHNOLOGY, INC., )
           Respondent. )

**OPINION AND ORDER**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiff/Movant Allscripts Healthcare, LLC's ("Allscripts") Motion for Declaratory and Injunctive Relief ("Allscripts Motion") and Defendant/Respondent Etransmedia Technology, Inc.'s Motion to Dismiss or Stay and Compel Arbitration ("Etransmedia Motion," together with Allscripts Motion, "Motions"). On January 28, 2016, the Court held a hearing on the Motions.

THE COURT, after reviewing the Motions, briefs in support of and in opposition to the Motions, the record evidence filed by the parties, the arguments of counsel, and other appropriate matters of record, CONCLUDES that the Etransmedia Motion should be GRANTED, and the Allscripts Motion should be DENIED for the reasons discussed below.

> *Morningstar Law Group by W. Swain Wood, Esq., J. Christopher Jackson, Esq., and John T. Kivus, Esq., and Barnes & Thornburg, LLP by Mark L. Durbin, Esq. for Plaintiff/Movant Allscripts Healthcare, LLC.*

> *Ellis & Winters LLP by Thomas H. Segars, Esq. and Jeremy Falcone, Esq., and Salazar and Erikson, LLP by Dana L. Salazar, Esq. for Defendant/Respondent Etransmedia Technology, Inc.*

McGuire, Judge.

## PROCEDURAL HISTORY

1.      The procedural history of the matter before the Court is long and somewhat complex. These parties, as will be discussed more thoroughly below, submitted a previous dispute to arbitration, which resulted in an award in Etransmedia's favor ("First Arbitration"). This civil action was initiated, and the parties filed cross-motions regarding that award; Allscripts moved to modify the award, and Etransmedia moved to confirm the award. Ultimately, on October 27, 2014, the Honorable Robert H. Hobgood confirmed the award in the First Arbitration, and judgment was subsequently entered in Etransmedia's favor.

2.      On or about May 18, 2015, Etransmedia initiated a second arbitration proceeding ("Second Arbitration")[1] against Allscripts under the arbitration agreement in the Partner Agreement.[2]  On June 9, 2015, Allscripts filed the Allscripts Motion. The Allscripts Motion seeks a declaration that claims set forth in by Etransmedia in the Second Arbitration are not subject to compulsory arbitration and are barred by the doctrine of *res judicata*.

3.      On June 25, 2015, Etransmedia responded to the Allscripts Motion, and filed the Etransmedia Motion. The relief sought in the Etransmedia Motion is, essentially, the converse of that sought in the Allscripts Motion; namely, that this Court dismiss or stay any pending civil action and compel Allscripts to participate in the Second Arbitration.

4.      The Motions have been fully briefed and argued, and are ripe for determination.

---

[1] AAA Case No. 01-15-0003-5566.
[2] *See* Second Agarwal Aff. (June 25, 2015), Ex. R. The Partner Agreement is discussed more thoroughly below.

## FACTUAL BACKGROUND

5.     The factual background of this case was recited in the Court's Order on Motion for Temporary Restraining Order and Preliminary Injunction entered on December 22, 2015 ("Preliminary Injunction Order"), and that background, to the extent it is not recited below, is incorporated herein by reference.[3]

### a.  The Parties.

6.     Allscripts is a healthcare-related software provider with its primary offices in Raleigh, and in Chicago, Illinois. Allscripts develops practice management and electronic health record software systems for physician practices.  These software systems included the MyWay and Professional software products. Allscripts' software offerings enable healthcare providers to comply with federal meaningful use requirements.

7.     Etransmedia delivers electronic health record, practice management, connectivity and revenue cycle management services to medical practices and health systems.[4] Etransmedia resold certain Allscripts software products, including Allscripts' MyWay and Professional products, together with additional Etransmedia services related to the products. Etransmedia purchased product licenses from Allscripts and then resold them to end users.

### b.  The Partner Agreement and the First Arbitration.

8.     On April 10, 2008, Etransmedia entered into an agreement with Misys Healthcare Systems, LLC ("Misys") regarding the purchase, promotion, resale, and hosting

---

[3] Although findings of fact made for the purpose of resolving a motion for preliminary injunction are not binding on the Court for the purpose of resolving the merits of a dispute, *see A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400 (1983), the parties have not presented any additional factual information that was not before the Court when ruling on Allscripts' preliminary motions.

[4] Agrawal Aff. (June 25, 2015) ¶ 3. As in the Court's Preliminary Injunction Order, the unsealed affidavit of Vikram Agrawal, cited here, is hereinafter referred to as "Agrawal Aff.," while the provisionally sealed version is cited as "Second Agrawal Aff."

of "Products and/or Services" ("Partner Agreement"). The Partner Agreement provided the terms under which Etransmedia would sell and service Misys products, specifically including MyWay and several other products offered by Misys at that time. The Partner Agreement contained an arbitration clause, through which the parties agreed that any dispute "in connection with the negotiation, execution, interpretation, performance or non-performance" of the Partner Agreement would be subject to arbitration "in accordance with the law of the state of North Carolina and the rules of the American Arbitration Association."[5]

9. On or about October 10, 2008, Allscripts merged with Misys and succeeded to its rights and obligations in the Partner Agreement.[6] Allscripts and Etransmedia subsequently agreed that Etransmedia would also sell an Allscripts' product called "Professional", along with other services related to Professional, but the parties never entered into a separate written agreement for the sale of Professional.

10. Etransmedia sold MyWay licenses and services from 2008 through 2012, and sold Professional licenses and services from 2009 through 2015.[7] At Allscripts' request, Etransmedia pre-purchased the MyWay and Professional licenses in bulk for resale to end users. Allscripts required a reseller order form each time Etransmedia pre-purchased the licenses. The same form was used for the pre-purchase of both the MyWay and Professional products.[8]

11. On October 5, 2012, Allscripts announced that it would phase out and discontinue the MyWay product. At the time of the announcement, Etransmedia had made a substantial investment in MyWay, had an existing customer base using the MyWay product, and held a substantial number of pre-purchased but unsold MyWay licenses. Accordingly,

---

[5] Etransmedia Arbitration Demand ("Demand"), Ex. 1, ¶ 19(d).
[6] Final Arbitration Award ¶¶ 4 and 8.
[7] Agrawal Aff. ¶ 6.
[8] *Id.* at ¶ 7.

Etransmedia objected to Allscripts' discontinuation of MyWay. Ultimately, the parties were not able to resolve the issues related to the MyWay product.

12. On August 7, 2013, Allscripts initiated the First Arbitration pursuant to the arbitration clause in the Partner Agreement. In the arbitration, Allscripts sought "resolution of 'any and all disputes between'" the parties.[9] In response, Etransmedia asserted nine counterclaims based on Allscripts' conduct surrounding the discontinuation of the MyWay product.[10] On August 14, 2014, an arbitration panel issued an award in favor of Etransmedia on its counterclaims of over $9.7 million. As noted above, on October 28, 2014, the Honorable Robert H. Hobgood entered an Order enforcing the award of the arbitration panel in the First Arbitration.

  *c. The Second Arbitration.*

13. On or about May 18, 2015, Etransmedia initiated the Second Arbitration against Allscripts.[11] Etransmedia alleged that after the award in the First Arbitration was issued:

> Allscripts began taking several steps that frustrated Etransmedia's work on Professional. For example, Allscripts began refusing to upgrade Etransmedia's Professional clients' software, declined to activate unsold Professional licenses in Etransmedia's inventory, and refused to provide ancillary products to any of Etransmedia's professional clients. When Etransmedia protested, Allscripts claimed that its non-renewal of the Partner Agreement justified its actions. When clients complained about the impact of Allscripts' failure to update their Professional software, Allscripts demanded full retail payment up front and, for some clients, amended order forms with changed terms, including the elimination of mandatory arbitration. For several months, Etransmedia attempted to resolve the issues through direct discussions with Allscripts. Etransmedia was unsuccessful.[12]

---

[9] Final Arbitration Award ¶ 14.
[10] *Id.* at ¶¶ 5, 15.
[11] *See* Second Agarwal Aff., Ex. R.
[12] Cons. Mem. Law Opp. Decl. and Inj. Relief p. 7.

In the Second Arbitration, Etransmedia raises essentially the same causes of action regarding the Professional product that it raised regarding the MyWay product in the First Arbitration.

14.     On June 9, 2015, Allscripts filed the Allscripts Motion in this Court seeking a declaration that the claims raised by Etransmedia in the Second Arbitration "are not subject to compulsory arbitration and are barred by *res judicata*."[13] Subsequently, Etransmedia filed its motion, contending that its claims are subject to arbitration and, to the extent Allscripts raises a *res judicata* challenge to those claims, that issue should be heard by the arbitration panel and not by this Court.[14]

15.     After the Motions were filed, Allscripts filed its Motion for Temporary Restraining Order and Preliminary Injunction, referenced above, in which it sought to enjoin the Second Arbitration until such time as the Court could rule on the Motions. On December 22, 2015, the Court denied the Motion for Temporary Restraining Order and Preliminary Injunction. The Court concluded that Allscripts had failed to show a likelihood of success on the merits of its underlying claim as to the arbitrability of the dispute regarding the Professional product, and had failed to show that irreparable harm would result if the requested injunction was not entered and it were required to arbitrate those claims[15] The Court now considers the Motions on their merits.

<u>DISCUSSION</u>

16.     The Motions currently before the Court present the same question, albeit framed from different perspectives: Are the claims raised by Etransmedia in the Second Arbitration subject to compulsory arbitration under the Partner Agreement? It is undisputed

---

[13] Allscripts Mot. p. 5.
[14] Shortly after the filing of the Initial Motions, the parties filed their Joint Motion for Stay, which was granted by the Court and resulted in a stay of proceedings until late October 2015.
[15] Preliminary Injunction Order ¶¶ 24, 26-27.

that the Partner Agreement contained a written agreement to arbitrate at least some disputes, and that the parties previously arbitrated under that provision. The parties disagree, however, as to the applicability of that provision to disputes arising out of the Professional product. Allscripts contends that the parties never intended or agreed that the Partner Agreement would govern the sale of Professional licenses, and that disputes regarding the Professional product are not subject to the Partner Agreement's arbitration provision. Etransmedia contends that the facts show that the parties intended to and did treat the Partner Agreement as applicable to the Professional product, and that the arbitration provisions in the Partner Agreement should be applied to its claims in the Second Arbitration.

17.     Whether framed from the perspective of the party seeking to compel or prohibit arbitration, the Court is charged with summarily deciding the question of arbitrability. *See* G.S. § 1-569.9(a), (b). In doing so, the Court must determine "(1) whether the parties have a valid agreement to arbitrate, and (2) whether the subject of the dispute is covered by the arbitration agreement." *Bass v. Pinnacle Custom Homes, Inc.*, 163 N.C. App. 171, 175 (2004).

18.     As an initial matter, it is undisputed that the Partner Agreement was executed by Etransmedia and Misys prior to Allscripts' merger with Misys, and thus prior to the opportunity for Etransmedia to sell Professional, an Allscripts product. It is also undisputed that the parties did not enter into a new written agreement specifically regarding the Professional product, but instead sold that product under existing agreements. The operative question, then, is whether the parties intended that the sale of Professional licenses would be governed by the Partner Agreement, and subject to the arbitration provision therein.

19.     As set out in the Preliminary Injunction Order, the facts before the Court show that the parties intended the terms of the Partner Agreement to apply to their relationship regarding the Professional product.  First, Allscripts has not cited to evidence in the record

nor argued that Allscripts and Etransmedia did not transact business with regard to Professional in exactly the same way as it had regarding MyWay. Instead, the evidence shows that the parties treated the MyWay and Professional products in the same manner. Allscripts required Etransmedia to pre-purchase the licenses for both products for resale to end users, used the same forms for the pre-purchases, and provided offered at least some of the same additional services to end users for both products.[16] The record evidence also includes internal emails between Allscripts' employees showing that Allscripts approved the sale of Professional licenses pursuant to the Partner Agreement after it was discovered that a new agreement had not been executed that specifically governing the sale of the Professional product.[17]

20.     The letter sent from Allscripts to Etransmedia regarding discontinuation of the MyWay product also provides evidence that Allscripts intended the Partner Agreement to cover the parties' relationship as to the Professional product. The language of the letter itself indicates that the parties intended the Partner Agreement to cover a variety of products and services, not limited to MyWay.[18] The letter refers to the Partner Agreement and to various addenda to that agreement, including an addendum of August 31, 2010, entered into well after Etransmedia had started selling the Professional product. The letter broadly reminded Etransmedia of its "existing obligations arising out of its sale of Allscripts' product licenses to existing end users." Most significantly, the notification letter told Etransmedia to replace existing MyWay licenses with Professional licenses pursuant to the terms of "the August 31, 2010 Addendum."[19] The letter suggests that Allscripts considered the Partner Agreement and

---

[16] The services included providing hosting of the MyWay and Professional applications on shared servers for those end users who did not wish to use an in-house server model.

[17] *See* Allscripts Mot., Ex. D., First Arb. Ex. 17.

[18] *See* Second Agrawal Aff., Ex. I (providing that "Etransmedia shall not be permitted to purchase additional product*s* or service*s* from Allscripts pursuant to the Partner Agreement") (emphasis added).

[19] *Id.*

its addenda to be the agreement under which the parties' relationship, including sales and service of the Professional product, was governed.

21.     Finally, Allscripts' characterization of the Partner Agreement in the First Arbitration supports the conclusion that the parties intended the Partner Agreement to govern the entirety of their business relationship, not simply the sale of the MyWay product.[20] In that arbitration, Allscripts raised issues related to the Professional product, namely whether Allscripts was entitled to offset any amounts owed by Etransmedia related to the Professional licenses sold against any award in favor of Etransmedia in the First Arbitration.[21] That Allscripts raised issues related to the Professional licenses in the First Arbitration, which is inconsistent with its current position that claims related to that product are not encompassed by any agreement to arbitrate, is additional evidence that these parties intended the Partner Agreement to govern disputes related to the Professional licenses such that those disputes are subject to compulsory arbitration.

22.     Allscripts argues that Etransmedia failed to introduce evidence that shows Etransmedia believed the Partner Agreement applied to Professional licenses. Allscripts contends that, to the contrary, Etransmedia's CEO testified at the First Arbitration that although Etransmedia placed orders for the Professional product and provided hosting services, Allscripts did not provide Etransmedia with "a written agreement with regard to Professional."[22] For the same reasons as discussed in the Preliminary Injunction Order,[23] the Court does not find Allscripts' argument persuasive, particularly in

---

[20] *See* Allscripts' Mot. Relief, Ex. B, Allscripts' Pre-Hearing Memorandum p. 6 ("Since April 10, 2008, Allscripts' and Etransmedia's relationship has been governed by a Partner Agreement entered into between Misys and Etransmedia on that date . . . .").

[21] Allscripts' Mot. Relief, Ex. B., Allscripts' Post-Hearing Memorandum p. 30.

[22] *Id.* at 5.

[23] *See* Preliminary Injunction Order ¶ 16 (noting that, as to the testimony of Agrawal, "Allscripts reads far too much into the testimony at the First Arbitration. Etransmedia's CEO's merely testified in response to specific questions that the parties had not reduced to writing a separate agreement

light of the other record evidence showing that the Partner Agreement applied to both the MyWay and Professional products.

23.     Allscripts also argues that Etransmedia should be judicially estopped from asserting that their claims regarding the Professional product fall under the Partner Agreement because it took the position that no such agreement existed during the First Arbitration. At the hearing on the Motions, Allscripts argued that in the First Arbitration Etransmedia contended that there was no written agreement governing the Professional product in order to avoid the economic loss rule and seek tort damages. In support of this argument, Allscripts referred the Court to, *inter alia*, Etransmedia' Post-Hearing Memorandum from the First Arbitration, and to the panel's award from the First Arbitration. These documents, however, do not support Allscripts' position. Etransmedia's Post-Hearing Memorandum argued that Allscripts owed Etransmedia duties "separate from and in addition to the duties arising from the Partner Agreement" that supported an award of tort and statutory damages.[24] The panel in the First Arbitration awarded Etransmedia damages under its statutory unfair and deceptive trade practices claim based on the panel's conclusion that "Allscripts owed Etransmedia duties distinct and separate from the duties it owed under the parties' contracts."[25] The damages awarded for that claim were based on Etransmedia's "purchase price of the MyWay licenses," and not on any claims involving the Professional product.[26]   The award did not expressly address the economic loss rule or Etransmedia's alleged position on whether the Partner Agreement covered the Professional product. On this

---

regarding sales or data hosting for the Professional product.  The testimony presented to the Court does not state, or suggest, that he testified that the parties did not use the Partner Agreement to govern their relationship regarding the Professional product nor that the arbitration provision in the Partner Agreement could not be applied to disputes about the Professional product.").

[24] Etransmedia Post-Hearing Memo. p. 21.

[25] Final Arbitration Award ¶ 41.

[26] *Id.* at ¶ 43.

record, the Court concludes, in its discretion, that Etransmedia should not be judicially estopped from taking the position it now asserts.[27]

24. In addition to arguing that the issues raised in the Second Arbitration are not subject to arbitration at all, Allscripts contends that Etransmedia's claims are barred by the doctrine of res judicata. Allscripts argues that the determination of whether these claims are barred by res judicata should be made by the Court, and not by the arbitration panel. These arguments were raised with regard to Allscripts' Motion for Temporary Restraining Order and Preliminary Injunction, and for the same reasons discussed by the Court in the Preliminary Injunction Motion (¶¶ 20-22), the Court concludes that Allscripts' res judicata arguments must be decided in the first place by the arbitration panel.

CONCLUSION

25. Ultimately, the Court concludes that, on the record evidence currently before it, the claims raised by Etransmedia in the Second Arbitration are subject to compulsory arbitration under the terms of the Partner Agreement. Further, the Court also concludes that any determination as to the impact of the doctrine of res judicata to those claims should be addressed by the arbitration panel. Accordingly, the Court concludes that the Allscripts Motion should be DENIED, and the Etransmedia Motion should be GRANTED.

THEREFORE, IT IS ORDERED that:

26. Allscripts' Motion for Declaratory and Injunctive Relief is DENIED.

27. Etransmedia's Motion to Dismiss or Motion to Stay and Compel Mediation is GRANTED, and this matter is DISMISSED, without prejudice.

---

[27] *See Whiteacre Partnership v. Biosignia, Inc.*, 358 N.C. 1, 26 (2004) (recognizing the "inherent flexibility" of applying judicial estoppel as a "discretionary equitable doctrine").

This the 17th day of March, 2016.

                                     <u>/s/ Gregory P. McGuire           </u>
                                     Gregory P. McGuire
                                     Special Superior Court Judge
                                        for Complex Business Cases